In the Matter of TINA T.

In the Matter of MICHAEL R.

In the Matter of RONNIE P.

Nos. 49500–9008–JV–576,
49500–9001–CV–11.

Supreme Court of Indiana.

Sept. 30, 1991.

Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellant.

Kenneth J. Falk, Sandra D. Leek, Legal Services Organization of Indiana, Inc., I. Marshall Pinkus, Indianapolis, for appellees.

DeBRULER, Justice.

### I. Procedural History

The gravamen of Chapter 14 of Title 31, Section 6, of the Indiana Code is that before a juvenile ward may be placed by court order in a "restrictive placement," defined generally as a placement other than the child's home or a foster home in the county of the child's residence, an independent body created by the chapter must meet and make a nonbinding recommendation to the court concerning the placement. Under I.C. 31–6–14–6, a local coordinating committee (LCC) is to be established in each county of this State to review restrictive placements [1] of wards which have been proposed by a referring agency.[2] The voting members of the LCC are the director of the county welfare department, the director of the community mental health center serving the child's area of residence, and the superintendent of the school corporation in which the child is legally settled, or the designees of these officials.[3] I.C. 31–6–14–7(a)(1) through (3). Subject to explicit exceptions, none of which is applicable here,[4] the LCC must review every proposed restrictive placement and make its recommendation before the placement may

---

1. Restrictive placements are defined specifically at I.C. 31–6–14–5:

    As used in this chapter, "restrictive placement" means a residential placement of a child at a residence other than:
       (1) The home of the child's parent, grandparent, sibling, aunt, uncle, cousin, stepparent, or guardian; or
       (2) A residence that is located in the child's county of residence and is maintained by a person as that person's home.

2. I.C. 31–6–14–4 defines "referring agency" as a "(1) juvenile court; (2) court having civil jurisdiction; (3) community mental health center; (4) county department; or (5) school corporation[ ] that proposes to make a restrictive placement or recommend a restrictive placement to a person with the authority to make a restrictive placement."

3. Nonvoting members of the LCC include the child's parent or guardian, the child's guardian ad litem, if one has been appointed and, if

requested by the chairman of the LCC, representatives of the local health department or any other agency or community organization. I.C. 31–6–14–7(a)(4) through (8).

4. I.C. 31–6–14–13(a) states:

    A committee is not required to review the following restrictive placements:
       (1) Predispositional detention of a child charged with a delinquent act[,] ... not to exceed sixty (60) days.
       (2) Placement of a child in an inpatient psychiatric facility, not to exceed thirty (30) days.
       (3) Emergency placement in a shelter care facility, not to exceed sixty (60) days.
       (4) Hospitalization for purposes other than psychiatric care.
       (5) Transfer of a child from one restrictive placement to another.

be made or before the referring agency may submit its proposal to the person authorized to make the placement, I.C. 31–6–14–12, which is most often the judge of the juvenile court having jurisdiction over the ward.

Appellees, three juvenile wards of the Marion County Department of Public Welfare, filed separate petitions in the Marion County Superior Court, Juvenile Division, asking that court for injunctive and declaratory relief and for class certification. The petitions requested that the court declare I.C. 31–6–14–1 *et seq.* unconstitutional and sought to represent, by way of class action, present and future wards of the Marion County Superior Court, Juvenile Division, or the Marion County Welfare Department who were awaiting restrictive placements pending a Local Coordinating Committee decision and the parents or guardians of those wards. The trial court found that the causes were properly brought as class actions under Ind.Trial Rule 23(B)(2) and certified the following two classes:

> [T]hose individuals who are determined to be delinquent children by a Petition filed under I.C. 31–6–4–1 and I.C. 31–6–2–1 [and those individuals who are determined as Children in Need of Services by a Petition filed under I.C. 31–6–4–3] and are or will be considered for restrictive placement and, therefore, must be referred to the LCC [pursuant to I.C. 31–6–4–1 *et seq.*].

The court also found that, as to each class, the challenged statute violates the Due Process Clause of the United States Constitution and that it constitutes an unauthorized legislative intrusion into the power of the judiciary, thus violative of Article 3, Section 1; Article 7, Section 1; and Article 1, Section 12 of the Indiana Constitution. The court further found that the statute was in conflict with the federal Social Security Act. The judgment of the juvenile court in both causes was to declare I.C. 31–6–14–1 *et seq.* to be void and to enjoin its further enforcement. A direct appeal of each judgment was taken by the State to this Court.[5]

## II. Facts

Appellee Tina T. was born on June 25, 1972, and she became a ward of the Marion County Department of Public Welfare (MCDPW) in 1984. Over the next five years, Tina was in and out of various placements, moving to and from her mother's residence, group homes, and the Indiana Girls' School. Tina was a chronic runaway, and she left her last court-ordered placement in October of 1989. Upon her return, she admitted that she had violated the terms of a suspended commitment to Girls' School, and final disposition on this matter was set for November 28, 1989. From November 13, 1989, to January 16, 1990, while awaiting the LCC's recommendation and final disposition of her case by the court, Tina was housed for sixty-four days at the Marion County Juvenile Detention Center. Tina filed her class action suit on January 1, 1990. She was moved to a runaway shelter on January 16, 1990, and ran from there the same day. The LCC met on January 24, 1990, and recommended that Tina be emancipated.

Appellee Ronnie P. was born on August 29, 1971, and he became a ward of the MCDPW in 1988. After Ronnie ran away from a Marion County group home in August of that year, the MCDPW and his guardian ad litem recommended that he enter a restrictive placement at the Gibalt School for Boys in Vigo County. While waiting for the LCC to meet and make its recommendation to the court, Ronnie was housed for sixty-one days at the Marion County Juvenile Detention Center. Ronnie filed his class action suit on October 4, 1988, and the LCC met on that same day

---

5. For the sake of convenience, all three petitions and subsequent filings of all parties will be referred to and considered in the remainder of this opinion as if they were made jointly. The issues raised and arguments made by all three juveniles are virtually identical, as are the responses made by the State. Further, upon motion of counsel, the causes of appellees Michael R. and Ronnie P. were consolidated for consideration by the juvenile court prior to its consideration of the merits, and their joint cause was later consolidated with that of appellee Tina T. for consideration on appeal, again upon joint motion by counsel.

and recommended that the Gibalt placement be made.

Appellee Michael R. was born on April 17, 1973, and he became a ward of the MCDPW in 1984. On September 19, 1988, the MCDPW and Michael's guardian ad litem recommended that Michael enter a restrictive placement at Glen Mills School in Pennsylvania after he was abandoned by his family and a Marion County placement proved unsuccessful. Michael was housed for thirty days at the Marion County Guardian's Home while waiting for the LCC to meet and make its recommendation. Michael filed his class action suit on October 4, 1988. The LCC met on October 12, 1988, and recommended to the trial court that a restrictive placement be made for Michael at either of two named Indiana locations. On October 17 and 19, 1988, the trial court entered final orders placing Michael at the Glen Mills School.

In all three cases, final disposition was entered prior to the certification of the class.

### III. Mootness

■ An appeal or an issue becomes moot when:

1. it is no longer "live" or when the parties lack a legally cognizable interest in the outcome;

2. the principle questions in issue have ceased to be matters of real controversy between the parties; or,

3. the court on appeal is unable to render effective relief upon an issue.

*Roark v. Roark* (1990), Ind.App., 551 N.E.2d 865, 867. Appellant argues that this case is moot because the LCC met and made its recommendation and the court entered its final disposition in all three cases prior to its consideration of the merits of the constitutional claim, citing *State Dept. of Pub. Welfare v. Bair* (1984), Ind. App., 463 N.E.2d 1388, for the proposition that courts of this state have no jurisdiction in the absence of a live case or controversy existing between the parties. The appellees respond that this case falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. This exception applies when the named

plaintiff in a class action had a personal stake at the outset of the lawsuit, and the claim may arise again with respect to that plaintiff. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 398, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479, 491–92 (1980).

■ Although the named class representatives here had a personal stake at the outset of the litigation, all three have passed their eighteenth birthdays during the course of these proceedings. They are no longer subject to the provisions of the juvenile code and are beyond the jurisdiction of the juvenile court, and therefore no possibility exists that the claim might arise again as to any of them. Therefore, this case does not fall into the "capable of repetition, yet evading review" exception to the mootness doctrine.

This finding, however, is not determinative of the mootness question. The appellant in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), brought a class action challenging Iowa's durational residency requirement, which was a condition precedent to obtaining a divorce in that state. By the time the case got to the United States Supreme Court, Sosna had long since met the one-year requirement and had, in fact, obtained a divorce in another state. The Supreme Court noted that these events had fully extinguished the constitutional claim as to Sosna and that the possibility that she would again be subject to the challenged provision was highly speculative and found that the case did not fall within the "capable of repetition, yet evading review" exception.

The Court, however, declined to dismiss the case as moot, stating, "Although the controversy is no longer alive as to appellant Sosna, it remains very much alive for the class of persons she has been certified to represent." *Id.* at 401, 95 S.Ct. at 558, 42 L.Ed.2d at 541. The Court described the procedural dilemma and resolved it as follows:

[E]ven though [the State of Iowa] might not again enforce [its] durational residency requirement against [Sosna], it is clear that [it] will enforce it against

those persons in the class that [she] sought to represent and that the District Court certified. In this sense the case before us is one in which state officials will undoubtedly continue to enforce the challenged statute and yet, because of the passage of time, no single challenger will remain subject to its restrictions for the period necessary to see such a lawsuit to its conclusion.... We believe that a case such as this, in which ... the issue sought to be litigated escapes full appellate review at the behest of any single challenger, does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs.

*Id.* at 400–01, 95 S.Ct. at 557–58, 42 L.Ed.2d at 541 (citations and footnote omitted). The Court went on to caution that the "exigency that justifies this doctrine serves to identify its limits," *id.;* in other words, where the claimed harm would not be extinguished during the time typically required to afford appellate review, plaintiffs must satisfy the usual mootness requirements, *id.*

Applying these principles to the case at hand, we find that although the State may not again enforce the provisions of the challenged statute against any of the three named class representatives, the statute will certainly be enforced against members of the class they sought to represent. The mooting event put forward by appellant, namely, the meeting of the LCC and the making of its recommendation, can take place within a matter of hours, days or weeks of the initial proposal that a ward enter a restrictive placement, and therefore no individual will remain subject to the challenged statutory provisions long enough for a class to be certified, thereby allowing for appellate review of their constitutionality. Because the harm claimed by appellees here would never be of such duration to afford full appellate review of the challenged provisions, the appellees are exempted from showing that the claim is not moot as to them.

Reference to *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), is also instructive. Although the mootness question there was decided on the basis of the "capable of repetition, yet evading review" exception, we find the factual scenarios in that case and this one to be virtually identical and the Supreme Court's reasoning for proceeding to address the merits to be highly persuasive. The petitioners in *Gerstein* brought a class action challenging the constitutionality of Florida's pretrial detention procedures, which allowed most criminal defendants to be held prior to trial without a probable cause determination. Before proceeding to the merits of the constitutional claim, the Court addressed in a footnote the question of whether the intervening convictions of the named class representatives, which ended their pretrial detentions, had rendered the case moot. The Court determined that it had not:

This case belongs ... to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class. Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures....

At the time the complaint was filed, the named respondents were members of a class of persons detained without a judicial probable cause determination[.] ... [T]he length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given [plaintiff] ... would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely as-

sume that he has other clients with a continuing live interest in the case.

*Id.* at 110–11 n. 11, 95 S.Ct. at 861 n. 11, 43 L.Ed.2d at 63 n. 11 (citations omitted).

The factors found to be compelling by the United States Supreme Court in *Gerstein* are likewise compelling here. First, in the context of the detainment of juveniles for the period between initial and dispositional hearings, the Indiana Court of Appeals has observed that

> [d]etention is, of course, by its nature temporary because it is predispositional. Therefore, in each case, a claimed detention in violation of law will always be moot in the normal course of appellate review because the disposition [terminates] detention.

*N.J.R. v. State* (1982), Ind.App., 439 N.E.2d 725, 726. Second, were it not for the fact that appellees here attained the age of majority, they could have been subject to repeated impositions of the statute's provisions upon them, as it is common for wards to enter and leave restrictive placements on more than one occasion during their wardships.[6] Third, as noted above, the duration of delay between a proposal that a ward enter a restrictive placement and the recommendation of the LCC cannot be ascertained at the outset of the period and may end upon either of two events, the LCC's filing of its recommendation with the trial court, which appellant argues mooted this case, or the passage of the ward's eighteenth birthday, which has occurred as to all three appellees here. Fourth, as further noted above, while it is not certain that any given individual would remain in an interim placement pending an LCC recommendation long enough to get a class certified, it is certain that a class of wards subject to the challenged statute is in constant existence. Fifth, the same attorneys from Legal Services Organization of Indiana, Inc., represent all three appellees here, and it is safe to assume that they represent other juvenile wards with a continuing live interest in the controversy.

■ Finally, Indiana recognizes a public interest exception to the mootness doctrine, which may be invoked when the issue involves a question of great public importance which is likely to recur. *In the Matter of Sue Ann Lawrance* (1991), Ind., 579 N.E.2d 32. *State ex rel. Gregory v. Boyd* (1909), 172 Ind. 196, 87 N.E. 140. Clearly the procedures implemented to determine the fates of juvenile wards under the protection of the agencies of this State and the conditions under which they are cared for as these procedures operate are of paramount public importance and, as demonstrated by the above discussion, this issue is likely to recur. The public interest exception is properly invoked here. *See In re Marriage of Stariha* (1987), Ind.App., 509 N.E.2d 1117.

This case is not moot.

### IV. Class Certification

Appellant argues that the named plaintiffs do not meet the criteria for class certification set out in Ind.Trial Rule 23(A) and that the juvenile court erred in certifying the class. T.R. 23(A) states:

> Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

One commentator has stated, "The first two prerequisites of Rule 23, joinder impracticability and common questions, focus on the characteristics of the class.... The second two prerequisites, typicality and adequate representation focus ... on the desired characteristics of the class representative." H. Newberg, *Newberg on Class*

---

**6.** Appellee Tina T., for example, was moved into and out of two restrictive placements and was considered for a third during her wardship.

*Actions* § 3.13, at 163 (2d ed. 1985) (footnotes omitted).

■■■■ Appellant does not dispute the existence of a potential class, conceding that the prerequisites of numerosity of purported class members and commonality of questions are satisfied in this case. Rather, appellant contests the court's decision that the named plaintiffs meet the requirements of typicality of claims and adequacy of representation and argues that these three individuals are not proper representatives of the proposed class. In addressing these arguments, it is important to note that our rule is based on Federal Rule 23, and that it is therefore appropriate to look to the application given to that rule by federal courts when considering the application to be given to our own. *State ex rel. Harris v. Scott Cir. Court* (1982), Ind., 437 N.E.2d 952; *Kaufmann v. Credithrift Financial, Inc.* (1984), Ind.App., 465 N.E.2d 207.

Appellant argues without citation that plaintiffs failed to establish that their claims are typical of those of the class because some class members may not consider the delay inherent in the LCC procedure to constitute harm to them or to be violative of their constitutional rights. The State contends that it is incumbent upon plaintiffs to show that other class members "did not want to benefit from the operations of the LCC" before the class could properly be certified. No such showing is required by the plain language of Rule 23(A)(3), and the question of whether the LCC statute is constitutional clearly exists as to every member of the class and is therefore a question typical to the named plaintiffs and to the class they purport to represent.

Appellant's argument that the named plaintiffs will not adequately represent the interests of the class is nothing more than a reiteration of its argument that the case is moot with respect to them. We have decided the mootness question adversely to appellant and, having been provided no further substantive challenge to the plaintiffs' ability to adequately represent the class, we resolve this question against appellant

as well. We do note, however, that the United States Supreme Court found the mooting of the named plaintiffs' claims in *Sosna,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532, and *Gerstein,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, to cast no pall on the adequacy of class representation and to constitute no bar to those cases proceeding as class actions.

Although couched in terms of typicality and adequacy of representation, the actual gravamen of the State's allegation of error is that the position taken by the individuals certified by the juvenile court to represent the class on the class issue, namely, that the statute should be declared unconstitutional, is not the position that other members of the class might adopt. In other words, appellant maintains that the named plaintiffs should not be allowed to represent the class because their interests are antagonistic to those of some of the absent class members. When the Fifth Circuit Court of Appeals was called upon to evaluate whether a class with potentially adverse positions should be certified, that Court observed that "[i]ntra-class antagonism may be analyzed under either Rule 23(a)(4), the adequacy requirement, or Rule 23(a)(3), the typicality requirement." *Horton v. Goose Creek Indep. School Dist.,* 690 F.2d 470, 485 n. 27 (5th Cir.1982).

In an effort to respond to a growing drug and alcohol problem in the schools, the defendant school corporation in *Horton* brought in dogs trained to alert to contraband substances and had the dogs sniff lockers, cars, and the students themselves. A class action was filed which purported to represent all students in the school district and their parents and which challenged the constitutionality of this procedure under the Fourth Amendment. The District Court denied the plaintiffs' motion to certify the class, and on appeal the Fifth Circuit stated that, although there had been no proof of actual discord among class members, a very real possibility existed that some parents and students supported the canine search program. *Id.* at 485.

The Fifth Circuit analyzed the antagonism question under the adequacy of repre-

sentation requirement "because each class member *has* the claim asserted by the plaintiffs, so the plaintiffs' claims are typical, but many members do not see it as in their best interests to assert that claim." *Id.* at 485 n. 27 (emphasis in original). The Court concluded that the class should have been certified despite the potential for disagreement within the class. The Court noted the great range and flexibility of measures available to the trial court to ensure that absent members of the class were notified of the position being advanced by the class representatives and to accord them an opportunity to intervene and voice any dissent, but concluded that under the particular circumstances of this case, such measures were not necessary:

> [T]he parties in this case protected the interests of all absentees.... Though some members may disagree with the named plaintiffs, their position has been asserted energetically and forcefully by the defendant, which has argued that the school administration must be able to use these searches to combat a serious drug problem. In many cases, we would hesitate to rely on the opponent of the class to represent the views of dissenting class members [because of the possible dangers of collusion].... But in this case, the defendant vigorously opposed certification. In such circumstances, the possibility of collusion is virtually nil, and we can rely on the defendant to present to the court the arguments supporting the contention of any dissident absentees that the sniffing is not an unconstitutional search.

*Id.* at 487–88 (citations omitted).

As noted above, the question of the constitutionality of the LCC statute is typical to the class and here, as in *Horton*, the position of any absent class members who believe that the LCC statute is constitutional and that the continued operation of the LCC system is in their best interests is being vigorously asserted by the party opposing the named plaintiffs. We agree with the Fifth Circuit that, in most cases, the opponent of the class should not be relied upon to represent the interests of absent class members. In this case, how-

ever, the State of Indiana itself has amassed its forces to oppose the certification of the class and to advance arguments in favor of the constitutionality of and the beneficient purpose and operation of the LCC statutory scheme. The interests of any dissenting class members are more than adequately represented in this case, and therefore the potential for intra-class antagonism, as yet unrealized, is no bar to this cause proceeding as a class action with appellees as the class representatives.

■ Appellant also argues that the trial court erred in certifying the class because there was no "need" for a class action suit to address the claims of the plaintiffs here. However, a showing of need is not a prerequisite to class certification under Trial Rule 23. Further, because this was a challenge to the constitutionality of the statute, "[i]t was by its nature a claim which would, if successfully prosecuted by a lone plaintiff, provide a basis for classwide relief in the absence of certification," *Clark v. Lee* (1980), 273 Ind. 572, 406 N.E.2d 646, 649, and therefore, even if the court committed error in certifying the class, such error was harmless.

The juvenile court did not err in certifying the class with the named plaintiffs as class representatives.

■ We turn now to address the merits of this case. The juvenile court held that I.C. 31–6–14–1 *et seq.* is unconstitutional and enjoined its further enforcement, and the State appealed directly to this Court. The standard for assessing constitutional challenges is as follows:

> Legislation under constitutional attack in this Court is clothed in a presumption of constitutionality. The burden to rebut this presumption is upon any challenger, and all reasonable doubts must be resolved in favor of an act's constitutionality. When a statute can be construed to support its constitutionality, such construction must be adopted.

*Miller v. State* (1987), Ind., 517 N.E.2d 64, 71 (citations omitted). Further, it is the challenger's burden to show that the alleged constitutional defects are clearly ap-

parent. *Grassmyer v. State* (1981), Ind., 429 N.E.2d 248.

### V. Interference with the Judicial Function

■ The juvenile court found that the LCC statute imposes an unconstitutional legislative restraint on the functioning of the judicial branch of government, thus violative of two provisions of the Indiana Constitution: Art. 3, § 1, the separation of powers clause, and Art. 7, § 1, which provides that "[t]he judicial power of the State shall be vested in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish." The crucial provision of the LCC statute is I.C. 31-6-14-12:

> Except as provided in section 13 of this chapter, the committee shall review the restrictive placement proposed by a referring agency and make recommendations concerning less restrictive alternatives, if appropriate, to the referring agency before:
>
> (1) that placement may be made; or
> (2) the referring agency may submit its placement recommendation to the person authorized to make the placement.

Appellants argue that the LCC statute is not an attempt on the part of the legislature to supersede the power of the judiciary, but rather is a statutory device which enables courts to execute their duties more effectively. Appellees argue that the LCC statute preempts the inherent power of juvenile court judges to control the conduct of business in their courts and cite *State ex rel. Kostas v. Johnson* (1946), 224 Ind. 540, 69 N.E.2d 592, as authority for this position.

At issue in *Kostas* was a statute which expressly divested a trial court of jurisdiction for failure to rule on an issue more than sixty days after that issue had been taken under advisement. This Court found that statute to be a violation of the separation of powers clause of the Indiana Constitution and held it unconstitutional. That statute purported to pace the flow of judicial business through trial courts by statutory mandate by rescinding the jurisdiction of a court which had issued rulings legislatively deemed to be tardy and lodging it in another court which would, presumably, comply with the statutory deadline.

The *Kostas* Court cited cases from other jurisdictions in which similar legislative enactments imposing procedural time limitations on the operation of trial courts were found to be constitutionally infirm and found the sixty-day limit in which Indiana courts were to rule on matters taken under advisement to be likewise infirm. The Court held that "the statute involved constitute[d] legislative interference with the judiciary and to the extent that it require[d] action by courts within specified times and deprive[d] the courts of jurisdiction for failure to act within such time, [was] unconstitutional and void." *Id.* at 550, 69 N.E.2d at 596. Appellees urge this Court to find that the LCC statute, like the statute in *Kostas*, constitutes undue legislative interference in the judicial arena and to uphold the ruling of the trial court. We find, however, that the LCC statute is distinguishable from the statute at issue in *Kostas*, as it neither seeks to impose time limitations within which a court must act, nor purports to divest jurisdiction from courts not in compliance with its terms.

The LCC statute is most analogous, both in purpose and operation, to the presentence report statute from the criminal code.[7] I.C. 35-38-1-8 states:

---

7. Appellees argue that drawing an analogy between placement decisions in CHINS cases or delinquency proceedings and criminal sentencing is inaccurate. They posit that the juvenile procedures are of a continuous nature, not subject to clear division into adjudicatory and sentencing stages as is the criminal process. Reference to the juvenile code shows the fallacy of this argument. While juvenile adjudications are civil proceedings, rather than criminal, the analogies between the two are beyond serious dispute. I.C. 31-6-4-14 requires that upon the filing of a petition alleging that a juvenile is a child in need of services or a delinquent and a denial of those allegations, the juvenile court shall hold a fact-finding hearing. The function of this hearing is analogous to the fact-finding function of a criminal trial, and the two proceedings also show a high degree of similarity as to format and attachment of procedural safeguards to the subject of the proceeding. If the

(a) A defendant convicted of a felony may not be sentenced before a written presentence report is prepared by a probation officer and considered by the sentencing court. Delay of sentence until a presentence report is prepared does not constitute an indefinite postponement or suspension of sentence.

Like the LCC statute, the presentence statute acts to forestall the entry of the court's final decision until it receives and considers input from the professionals having the most complete, accurate, and up-to-date information available as to the subject of the court's inquiry. The purpose for requiring submission of the presentence report by the probation office and the consideration of the report by the sentencing court prior to the imposition of sentence is to enable the court to structure an individualized sentence for the defendant then before the court. *Yates v. State* (1982), Ind.App., 429 N.E.2d 992. This point was made in a separate opinion in the context of the proper construction of § 9–2252 (Burns 1956), a predecessor statute to I.C. 35–38–1–8:

> The whole point of the requirement that the trial court consider the ... report is to have the facts contained therein *affect* the trial court's exercise of discretion in determining the amount of fine or term of imprisonment, in deciding whether the sentence should be suspended, and in setting realistic terms of probation.

*Robb v. State* (1970), 253 Ind. 448, 454, 255 N.E.2d 96, 100 (DeBruler, J., concurring in result) (emphasis in original).

The similarities both in purpose and operation between the presentence statute and the LCC statute are apparent. The goal of the two statutes is the imposition of appropriate, individualized criminal sentences and juvenile dispositions and, in order to advance that goal, each statute requires that the trial court be made fully cognizant of the unique characteristics of the individual whose fate is being determined as well as the particular circumstances which brought him before the court. Neither the probation office nor the LCC is required to act within a statutorily prescribed time, yet clearly both are expected to fulfill their duties to the court as efficiently as their resources allow. Compliance with either statute may temporarily delay the determination of the final outcome of a case, but the outcome ultimately reached will be better reasoned and better tailored to the individual before the court by virtue of that delay. Rather than interfering with or hampering the judicial decisionmaking process, both statutes complement and enhance that process by ensuring that the decision rendered by the court is fully informed. We find that the LCC statute does not violate the separation of powers clause of the Indiana Constitution.

Both appellant and appellees cite the case of *Hightower v. State* (1976), 168 Ind. App. 194, 343 N.E.2d 300, in support of their respective arguments that the LCC statute is and is not in accord with Art. 7, § 1, of the Indiana Constitution. In *Hightower*, the Court of Appeals upheld the constitutionality of § 9–4001 *et seq.* (Burns

outcome of the fact-finding hearing is the determination that the juvenile is a CHINS or a delinquent, I.C. 31–6–4–15.3 requires that a dispositional hearing be scheduled at which time arguments in favor of particular dispositions are made and the juvenile court enters its order. This hearing is directly analogous to the sentencing hearing which is required after a determination of guilt in the criminal context. Finally, 31–6–4–15.4 and 31–6–4–15.5 set out the range of dispositions which the juvenile court may enter upon a finding that a juvenile is a CHINS or a delinquent, respectively. This corresponds directly to those provisions in the criminal code which identify the possible sentences which may be imposed for each class of felony. In support of its argument that "sentencing of a criminal is not solely a judicial function," appellees cite the following passage from *Havens v. State* (1981), Ind., 429 N.E.2d 618, 622:

> [T]he Legislature has the power to set the penalties and the range of available dispositions in criminal cases.... Thus, the trial court's power extends only to choosing from legislatively granted sentencing alternatives[.]

This statement on the limits of judicial discretion is as applicable in the juvenile context as in the criminal. Juvenile courts, while accorded great latitude in fashioning dispositions, do not enjoy completely unfettered discretion. Like criminal sentencing courts, they are bound to choose among dispositional alternatives which have been devised by the legislature and set out in the code.

1971) (repealed 1979), the criminal sexual deviancy statute. Under that statute, upon the motion of any party or the court, the court was required to set in motion a procedure which resulted in the determination of whether a defendant convicted of certain sexual offenses would be treated in a psychiatric facility or incarcerated in a penal facility. This procedure included the examination of the defendant by two physicians, one of whom having special expertise in the field of mental disorders, and the filing of reports reflecting the conclusions of the physicians with the court. If both physicians were of the opinion that the defendant was a "probable criminal sexual deviant," the court was then required to schedule a hearing at which time evidence and arguments would be heard and the court would determine whether the defendant was "probably a criminal sexual deviant" and, if so, move him on to the next stage of the procedure. Because the physicians who examined Hightower reached no agreement as to whether he was a probable criminal sexual deviant, the trial court terminated the procedure, as required by the terms of the statute.

Appellant correctly points out that § 9–4001 withstood Hightower's challenge that it constituted a violation of the separation of powers doctrine. Hightower argued that the statutorily mandated recommendations of the physicians usurped the fact-finding function of the court. This argument was rejected by the Court of Appeals because

> [t]he court at all times had complete control of the case and under the statute the final determination [of whether or not the defendant was a treatable criminal sexual deviant within the meaning of the statute was] left to the trial court.... [T]he judge made an independent finding under the statute on the evidence before him and the medical reports did not usurp this function.

*Id.* at 200, 201, 343 N.E.2d at 304, 305 (citation omitted).

Appellees attempt to distinguish the criminal sexual deviancy statute and the LCC statute by citing the following language from the *Hightower* opinion:

> [I]t was wholly within the trial court's discretion and power to discontinue further hearings on the matter of Defendant's criminal sexual deviancy[.]

*Id.* at 199, 343 N.E.2d at 304. They argue that, whereas the trial court in *Hightower* could have stopped the operation of § 9–4001 at any point in the proceedings, the LCC statute leaves no such room for the exercise of the juvenile court's discretion to discontinue the LCC process. The quotation cited by appellees, however, is taken out of context. That passage appears, not in the section regarding the constitutionality of the criminal sexual deviancy statute, but in the section addressing whether the trial court abused its discretion by denying defendant's motion for additional examinations or for a hearing after the trial court had fully complied with the statute's provisions. Contrary to appellee's contentions, the trial court in *Hightower* could not exercise its discretion to halt the evaluative process once it had begun; the court was empowered, however, to proceed to the next stage or to terminate the process at precise junctures and upon specified conditions identified in the statute itself.

██ Appellees also argue that the LCC statute violates the separation of powers doctrine because the director of the county welfare department, a member of the executive branch of government, is one of the voting members of the LCC. Appellees rely on *Rush v. Carter* (1984), Ind.App., 468 N.E.2d 236, wherein the Indiana Court of Appeals ruled that a county police officer could not contemporaneously serve as an elected member of the county council. The Court of Appeals found that the separation of powers clause of the Indiana Constitution would be violated should Rush be allowed to simultaneously occupy these dual roles in government, stating:

> The object of the separation of powers is to preclude a commingling of three essentially different powers in the same hands in the sense that the acts of each shall never be controlled by or subjected directly or indirectly to the coercive influence of either of the others. The obvious constitutional frailty under the facts of

this case is that Rush as a county council member (a member of the legislative branch) would have, in some degree, fiscal control over, Rush the county policeman, (a member of the executive branch) as well as the rest of the county police department.

*Id.* at 238 (citation omitted).

We find the situation in *Rush* to be distinguishable from the situation at hand. As a member of the county council, Rush would have been a member of a body which exercised actual decisionmaking power, and he could have influenced the other council members such that actions taken by that body accrued to his own personal benefit or to the benefit of his department of the executive branch of government and to the detriment of other departments. The LCC has absolutely no decisionmaking power; it is authorized only to make a recommendation to the juvenile court, which the court is obligated only to consider.

The proceedings below illustrate plainly that juvenile courts are impervious to the kind of coercive influence which the *Rush* Court warned against. Only in the case of appellee Michael R. did the recommendation of the LCC differ from the placement advocated by the MCDPW and the child's guardian ad litem. After receiving and considering the LCC's recommendation, the juvenile court rejected its proposed placement in favor of the one suggested by the MCDPW and the guardian and entered its order accordingly. The presence of one member of the executive branch of government on a multi-member committee which serves a purely advisory role to the judicial branch does not violate the separation of powers doctrine.

■ Appellees argue that the postponement of the entry of a final dispositional order pending the LCC's recommendation violates Article 1, § 12, of the Indiana Constitution, which provides that "[j]ustice shall be administered ... speedily, and without delay." Appellees correctly note that this constitutional provision is equally applicable in the criminal and civil contexts, citing *State v. Taylor* (1956), 235 Ind. 632, 137 N.E.2d 537. Again, reference to the operation of the presentence report statute is dispositive of appellees' argument. The degree of importance attached to the presentence report is reflected by the fact that a trial court's failure to comply with the presentence report statute has been found by this Court to constitute reversible error. *Hinton v. State* (1979), 272 Ind. 297, 397 N.E.2d 282; *Ware v. State* (1963), 243 Ind. 639, 189 N.E.2d 704. The legislature has also indicated the crucial nature of I.C. 35–38–1–8 by including a provision in the text of the statute itself which provides that delay in pronouncing sentence occasioned by compliance with its terms "does not constitute an indefinite postponement or suspension of sentence."

Both by statute and by rule of this Court, criminal sentencing courts are under a duty to sentence persons convicted of a felony within thirty days of the finding of guilt unless good cause is shown for an extension. I.C. 35–38–1–2(b); Ind.Crim. Rule 11.[8] That a person convicted of a crime has an interest in the speedy imposition of sentence is clear. Equally clear, however, is that he has an even greater interest in having an appropriate sentence imposed on him and that this interest is advanced by the filing of a complete and accurate presentence report and the serious consideration of that report by the sentencing court such that it may properly exercise its sentencing discretion. Therefore, the time during which a presentence

---

**8.** This time limitation is in the nature of a substantive safeguard that neither the imposition of sentence nor the right to appeal will be indefinitely postponed or suspended by an arbitrary exercise of discretion on the part of the sentencing court. *Warner v. State* (1924), 194 Ind. 426, 143 N.E. 288; *Smith v. State* (1919), 188 Ind. 64, 121 N.E. 829, *rev'd on other grounds Stevens v. State* (1949), 227 Ind. 417, 86 N.E.2d 84. This is a legitimate restraint imposed on judicial discretion which evidences a shared concern of both this Court and the legislature and which represents a cooperative response to that concern consistent with our governmental system of checks and balances. I.C. 35–38–1–2 is to be contrasted to the statute at issue in *Kostas,* which was nothing more than an attempt by the legislature to impose a purely procedural rule on the operation of the court system. The adoption of rules of procedure is the unique province of this Court and may not be usurped by legislative enactment. *Solimeto v. State* (1919), 188 Ind. 170, 122 N.E. 578.

report is compiled and considered constitutes good cause to delay sentencing under the exception expressly provided by both Criminal Rule 11 and I.C. 35–38–1–2. In response to an argument that a trial court committed reversible error by rescheduling a sentencing date well after the thirty-day limit had expired because the presentence report had not yet been filed, this Court stated, "While courts should be prompt in pronouncing sentence ... the court need not show exact compliance [with the thirty-day limit] where defendant or the court needs additional time to complete procedural steps mandated by statute or the practice of the court." *Dudley v. State* (1985), Ind., 480 N.E.2d 881, 905.

Likewise, in the context of juvenile dispositions, the juvenile has an undeniable interest in the speedy entry of a final order. However, his interest in being placed appropriately is paramount. Having the placement decision made soon must yield to having it made well, and the input from the members of the LCC is invaluable to the proper exercise of the juvenile court's discretion as the recommendation represents the collective opinion of the welfare, mental health and educational professionals most closely associated with the child. Juvenile courts are not subject to the thirty-day rule which governs criminal sentencing courts. Like criminal courts, however, they should be prompt and should enter their final dispositions within a reasonable time. Just as criminal courts are excused from exact compliance from the thirty-day rule in order to comply with the presentence report statute, the "reasonable time" within which juvenile courts are to enter their orders includes time to comply with the LCC statute. In *Dudley*, 480 N.E.2d 881, and *Long v. State* (1981), Ind., 422 N.E.2d 284, this Court found that the passage of fifty-seven days and thirty-six days, respectively, between the finding of guilt and the imposition of sentence did not require reversal or modification of the defendants' sentences because the delay was for the purpose of affording time for the probation officer to file the presentence report and the sentencing court to consider that report. Likewise, we find that the juvenile court entered its final dispositions in the cases of

the three named plaintiffs here within a reasonable time, which included the time spent to comply with the LCC statute. The LCC statute does not impose unconstitutional delay on the function of the judicial system in contravention of the "speedy justice" clause of the Indiana Constitution.

Appellees argue that any delay in making a final disposition which results by virtue of compliance with the LCC statute "is particularly serious in a delinquency case where the ultimate disposition is commitment to the Boys School or Girls School. Because the commitment is until the age of 21, unless earlier relese [sic] is obtained from the Department, there is no 'good time credit.'" This argument is without merit. First, if serious consequences accrue to a ward upon the commitment to Boys or Girls School, it is the more crucial that the juvenile court make a sound decision based upon the fullest information possible; compliance with the LCC statute will contribute significantly to the court's ability to do so. Second, there is no need for good time credit in the juvenile context. Unlike the criminal justice system, where a defendant serves a finite sentence and can anticipate release upon a day certain, a ward of the juvenile court remains under the court's continuing jurisdiction until he reaches the age of majority, the court discharges the ward in the exercise of its discretion, or guardianship is awarded by the court to the Department of Corrections. I.C. 31–6–2–3. Rather than a determinate term of imprisonment which can be shortened by good time credit, the continuous judicial oversight of a ward under the jurisdiction of the juvenile court extends over a variety of settings and can be terminated at any point at which the court determines that it is no longer necessary or appropriate. Even if the ward is committed to Boys or Girls School and guardianship is awarded to the Department of Corrections, appellees themselves point out that such commitment does not necessarily extend until the juvenile reaches the age of majority, but may be terminated upon the determination of the DOC that a less restrictive placement has become appropriate. Accumulating a specific number of days for good time served in order to earn an earlier

release from incarceration simply has no applicability here.

Finally, both appellant and appellees have advanced arguments concerning the constitutionality of the LCC statute based on case law from other jurisdictions. Because we have resolved this issue by reference to existing Indiana law, we need not address these arguments. Suffice it to say that there is persuasive authority on both sides of the issue, and we consider that which supports upholding the constitutionality of the LCC statute to be the more persuasive.

## VI. Violation of Federal Social Security Act

The juvenile court found that "to the extent the LCC Law forces children to remain in inappropriate placements, the law violates Title IV–B and Title IV–E of the Social Security Act, 42 U.S.C. Section 622 *et seq.;* 42 U.S.C. Section 671, *et seq.*, and is void." This portion of appellees' claim for relief was brought under 42 U.S.C. § 1983. They also made a claim for attorneys' fees which are made available to the prevailing party in such a civil rights action under 42 U.S.C. § 1988. The juvenile court found that appellees were the prevailing parties, awarded attorneys' fees to them, and set a hearing to determine the amount of that award. Appellant argues that the juvenile court's ruling was erroneous because Titles IV–B and IV–E do not create rights enforceable by a § 1983 action and, in the alternative, that if such rights do exist under the Social Security Act, compliance with the LCC statute does not violate them.

We do not address appellant's allegations of error, however, because we find that the juvenile court committed a much more fundamental error. A claim for relief under § 1983 need allege only that some person acting under color of state law has deprived the claimant of a federal right. *Green v. Maraio*, 722 F.2d 1013, 1016 (2d Cir.1983) (citing *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). Appellees' claims for relief, however, do not allege that any person or entity committed any act which violated the federal rights to which they claim

entitlement under the Social Security Act. Appellant pointed out this pleading error in its answer. The juvenile court in its Conclusion of Law # 17 found that "[t]he Department [of Public Welfare] is a 'person' for purposes of 42 U.S.C. Section 1983." This finding constitutes reversible error on this issue. Even a liberal interpretation of a civil rights complaint may not supply an essential element of a § 1983 claim which was not initially pled. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir.1982). The juvenile court should have granted appellant's cross-motion for summary judgment as to this issue on this basis.

We note further that the brief submitted on behalf of the class represented by appellee Tina T. does not address the arguments made by appellant, but "stress[es] that the only significance of whether a § 1983 action can be brought here is on the issue of attorneys' fees.... Inasmuch as this action was brought by the Juvenile Court Public Defender, counsel now waives any fees under 42 USC § 1983." This all but concedes that the alleged violation of the Social Security Act is not a valid basis on which to hold the LCC statute void.

## VII. Violation of Federal Due Process Clause

In its Conclusions of Law, the juvenile court found that minor wards have a right to treatment under the Due Process Clause of the Fourteenth Amendment to the federal Constitution and that the "LCC Law violates this right and requires wards to remain in potentially inappropriate placements thereby delaying treatment." Appellant argues that the case at bar does not involve a denial of a right to treatment. We agree. No allegation was made, nor did the court find, that any of the appellees was denied necessary physical or mental health care or that the conditions of their temporary placements were inadequate in any way. Appellees cite a recent case from the United States Supreme Court for the proposition that

when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.

*DeShaney v. Winnebago County Dept. of Social Serv.*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249, 261 (1989). The LCC statute does not constitute a violation of this duty, but a legislative device implemented to ensure that the duty is properly fulfilled. A stay in interim housing pending the determination of the best permanent placement of a juvenile ward does not compromise the child's constitutional right to due process.

VIII. Decision of this Court

We find that I.C. 31–6–14–1 *et seq.* does not violate the Indiana Constitution or the Due Process Clause of the United States Constitution. The judgments to the contrary made by the juvenile court in the two class action suits below are therefore reversed.

SHEPARD, C.J., and GIVAN, DICKSON and KRAHULIK, JJ., concur.