## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 30 2020, 9:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

K.P.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 30, 2020

Court of Appeals Case No.
20A-JV-1431

Appeal from the Lake Superior Court

The Honorable Jeffrey Miller, Magistrate

Trial Court Cause No.
45D06-1911-JD-643

**Brown, Judge.**

[1] K.P. appeals the juvenile court's order committing him to the Indiana Department of Correction (the "DOC"). We affirm.

*Facts and Procedural History*

[2] On November 6, 2019, the State filed a verified petition under cause number 45D06-1911-JD-643 ("Cause No. 643") alleging K.P. was delinquent for committing auto theft, resisting law enforcement, and criminal recklessness, level 6 felonies if committed by an adult, and reckless driving and operating a motor vehicle without ever receiving a license, class C misdemeanors if committed by an adult.

[3] On November 14, 2019, the court held an initial hearing at which K.P. and his counsel, mother, and stepfather were present. K.P.'s counsel indicated K.P. denied the allegations.

[4] On November 21, 2019, the court held a hearing at which K.P. and his mother and counsel appeared. K.P.'s counsel indicated that K.P. would admit to auto theft and resisting law enforcement. During a discussion, the court asked K.P. if he agreed to "In-house level 2 which is a monitor on your ankle," and K.P. answered: "I'm cool with that, Your Honor." Transcript Volume II at 15. K.P. admitted to auto theft and resisting law enforcement.

[5] That same day, the court entered an Order on Plea Agreement and Dispositional Decree in which it found K.P. admitted to auto theft and resisting law enforcement, level 6 felonies if committed by an adult. The order observed that the State dismissed the remaining allegations under Cause No. 643 as well

as allegations of auto theft, criminal recklessness, reckless driving, and operating a motor vehicle without ever receiving a license under a separate cause number. The court committed K.P. to the Lake County Juvenile Center for sixty days and suspended the commitment on the condition that K.P. comply with the terms of the order. The court placed K.P. on probation for six months, ordered him to complete forty hours of community service by April 1, 2020, and to participate in home-based services through Choices, and placed him on "InHouse-2" for sixty days. Appellant's Appendix Volume II at 35.

[6] On January 15, 2020, the Probation Department filed a Probation Request to Extend In-House Arrest, Level 2, which alleged that K.P. had accumulated multiple violations, indicated that the Probation Department would like to provide K.P. an opportunity to improve his behavior, and requested that the court extend K.P.'s In-House Arrest, Level 2, for an additional sixty days. The request also stated that the Probation Department spoke with K.P.'s mother and "she is in agreement with [K.P.'s] In-House being extended, as mother indicated that she works in Chicago, IL and she is unable to account for [K.P.'s] behavior." *Id.* at 38. On January 21, 2020, the court extended K.P.'s In-House Arrest, Level 2, for an additional sixty days.

[7] On March 6, 2020, the Probation Department filed a verified petition to detain K.P. alleging that he had accumulated multiple violations in February and March for leaving the home "and not having a callout," and tested positive for THC. *Id.* at 44. On March 10, 2010, the court entered an Order to Detain, which granted the State's petition, found that K.P. had violated the conditions

of in-home detention, and stated that a bench warrant for K.P. would be issued. That same day, the court issued a bench warrant for K.P.

[8] On March 11, 2020, the court held a detention hearing at which K.P. appeared with counsel. K.P. indicated he was seventeen years old, understood his rights, and admitted to leaving his house. Probation Officer Alphonso Royal indicated he spoke with K.P.'s mother that morning and she stated that she was not going to attend the hearing. Officer Royal stated that K.P. had accumulated about six violations of in-house arrest by January 15th, he spoke with K.P. and his mother about the possibility of being in detention as a result of violating the rules of in-house arrest, and K.P. and his mother decided that he would rather remain on in-house arrest for an additional extended time rather than being detained. He also stated the court granted that extension and allowed K.P. to continue with services, but "we came across another series of violations of in-house arrest." Transcript Volume II at 24. The prosecutor recommended that K.P. remain detained and asserted that K.P. flagrantly flaunted the rules of in-house arrest.

[9] K.P.'s counsel indicated K.P.'s mother was not present, that he would call her as a witness, and "it's whether or not she's willing and able to take her son home. It's not possible. So at this time, I have no evidence to offer to the Court." *Id.* at 25.

[10] The court asked Rhonda Collins from Choices how K.P. was doing in the program, and she indicated that he was typically compliant with his service

providers, but did not comply with services in a recent incident. She also stated that he had "one negative drug screen," "[b]ut other than that, they've all been positive," and "the only thing that is guaranteed is that he is testing positive for marijuana and/or alcohol depending on the day." *Id.* at 26.

[11] The court found reasonable efforts were made to prevent or eliminate the need for K.P.'s removal, such efforts had not been successful, and it was in K.P.'s best interest to remain detained. The court stated that K.P.'s mother was not present and it could not release K.P. unless a parent was present.

[12] On March 11, 2020, the Probation Department filed a Verified Motion for Modification which requested the court to make a preliminary inquiry to determine whether the interests of the public or the child required that further action to be taken. That same day, the court entered an Order on Detention Hearing finding that K.P. should be detained in secure detention at the Lake County Juvenile Center because detention was essential to protect K.P. and the community, and the parent, guardian, or custodian could not be located or was unable or unwilling to take custody of K.P.

[13] On May 14, 2020, the court held a modification hearing at which K.P. and his counsel and mother were present. K.P. admitted to violating probation by testing positive for marijuana and being suspended from Gary Middle College. Officer Royal recommended that K.P. be committed to the DOC. He stated that a psychological evaluation K.P. received recommended that he be placed in a structured setting to address his oppositional defiant disorder, and he

testified that "probation feels that the more structured setting at the [DOC] is where he can get proficient in school work." *Id.* at 34.

[14] The court asked about residential placement, and Officer Royal answered:

> Well, one part of the pysch [sic] is discussing that vocation or services related to vocation being . . . ideal for [K.P.] because of his cognitive abilities. The [DOC] is geared to provide a vocation, or trade and then they also could address the behavior modification piece of [K.P.'s] actions and behaviors.

*Id.* at 36. The prosecutor concurred with the recommendation.

[15] K.P.'s counsel stated:

> [K.P.'s] record is pretty clear. He's had many chances and he's had many violations. The violations point to a child that really needs services. Yes, he violated, smoked marijuana, didn't complete the middle college. He did all those things, but that's a reflection on our system. That's a reflection on the system that we set up to help him. It's an indication that it hasn't worked. Of course, if he had his preference, he would say in-house arrest level 2; but given the psychological, perhaps, something like placement would be more appropriate. And contrary to what Counsel had argued, our feeling is that the DOC is a form of punishment and will not help to put him on the right track.

*Id.* at 37.

[16] The court admitted the February 14, 2020 psychological assessment and indicated that it needed to read the report and would take the matter under advisement. That same day, the court entered an Order on Modification

Hearing, which found that K.P. admitted to the allegations in the Petition to Modify and indicated that the court took the disposition under advisement.

[17] On June 15, 2020, the court entered a Modified Dispositional Decree which awarded wardship of K.P. to the DOC for housing in any correctional facility for children.

## *Discussion*

[18] K.P. argues that the juvenile court violated his right to due process by extending his in-house arrest for an additional sixty days without a hearing and later by pronouncing his commitment to the DOC without reconvening the hearing. He argues the court's delay of over a month violated Article 1, Section 12 of the Indiana Constitution, and that the court abused its discretion by committing him to the DOC.

[19] To the extent K.P. asserts that the juvenile court violated his due process rights by extending his in-house arrest for an additional sixty days in its January 21, 2020 order, the record reveals that the January 15, 2020 Request to Extend In-House Arrest, Level 2, stated that K.P.'s mother was "in agreement with [K.P.'s] In-House being extended, as mother indicated that she works in Chicago, IL and she is unable to account for [K.P.'s] behavior."[1] Appellant's Appendix Volume II at 38. At the March 11, 2020 hearing, Officer Royal

---

[1] The January 15, 2020 Request to Extend In-House Arrest, Level 2, indicated that the pleading had been served upon K.P. and his mother.

testified that K.P. had accumulated about six violations of in-house arrest by January 15th, he spoke with K.P. and his mother about the possibility of being in detention as a result of violating the rules of in-house arrest, and "both [K.P.'s mother] and [K.P.] decided that he would rather remain on in-house arrest for an additional extended time rather than being detained as a result of violating in-house arrest." Transcript Volume II at 24. Under the circumstances, including that K.P. and his mother agreed to the extension and K.P. did not appeal the court's January 21, 2020 order, we cannot say reversal is warranted.

[20] As for K.P.'s argument that the juvenile court's taking the disposition under advisement for over a month denied him his right to justice without delay, Article 1, Section 12 of the Indiana Constitution provides that "[j]ustice shall be administered . . . speedily, and without delay." The Indiana Supreme Court has held that "in the context of juvenile dispositions, the juvenile has an undeniable interest in the speedy entry of a final order." *Matter of Tina T.*, 579 N.E.2d 48, 61 (Ind. 1991). "However, [the juvenile's] interest in being placed appropriately is paramount," and "[h]aving the placement decision made soon must yield to having it made well . . . ." *Id.* "Juvenile courts are not subject to the thirty-day rule which governs criminal sentencing courts. Like criminal courts, however, they should be prompt and should enter their final dispositions within a reasonable time." *Id.*

[21] The record reveals the court admitted the February 14, 2020 psychological assessment near the end of the May 14, 2020 hearing and indicated that it

needed to read the report and would take the matter under advisement. The court also stated: "You'll have my answer within a couple of days, beginning of next week." Transcript Volume II at 42. That same day, the court entered an order indicating that it took the disposition under advisement. Thirty-two days after the hearing, on June 15, 2020, the court entered a Modified Dispositional Decree. While such a delay is not a best practice, we cannot say K.P. was denied his rights or that the delay requires reversal.

[22] With respect to K.P.'s argument that he should have been present when the court committed him to the DOC, he cites Ind. Code § 35-38-1-4, which provides that "[t]he defendant must be personally present at the time sentence is pronounced." The State notes that the juvenile code does not have a similar statutory provision, and K.P. does not direct our attention to such a provision. K.P. was present with counsel at the November 14, 2019, November 21, 2019, and March 11, 2020 hearings. Further, at the May 14, 2020 modification hearing, K.P. and his mother were present, and K.P. and his counsel argued with respect to his placement. We cannot say reversal is warranted on this basis.

[23] To the extent K.P. challenges his commitment to the DOC, the juvenile court is given wide latitude and great flexibility in determining the disposition of a delinquent child. *D.A. v. State*, 967 N.E.2d 59, 65 (Ind. Ct. App. 2012). However, its discretion is circumscribed by Ind. Code § 31-37-18-6, which provides that, "[i]f consistent with the safety of the community and the best interest of the child," the juvenile court shall enter a dispositional decree that is

"in the least restrictive (most family like) and most appropriate setting available" and "close to the parents' home, consistent with the best interest and special needs of the child"; least interferes with family autonomy; is least disruptive of family life; imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and provides a reasonable opportunity for participation by the child's parent, guardian, or custodian. Under the statute, placement in the least restrictive and most appropriate setting available applies only "[i]f consistent with the safety of the community and the best interest of the child." *J.D. v. State*, 859 N.E.2d 341, 346 (Ind. 2007) (citing Ind. Code § 31-37-18-6). We review the juvenile court's disposition for an abuse of discretion. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010).

[24] The record reveals that K.P. admitted to auto theft and resisting law enforcement at the November 21, 2019 hearing. At the March 11, 2020 hearing, K.P. admitted to leaving his house. Officer Royal stated that K.P. had accumulated about six violations of in-house arrest by January 15th and that another series of violations of in-house arrest occurred. Collins from Choices stated that "the only thing that is guaranteed is that he is testing positive for marijuana and/or alcohol depending on the day." Transcript Volume II at 26. At the May 14, 2020 hearing, K.P. admitted to violating probation by testing positive for marijuana and being suspended from Gary Middle College. Officer Royal recommended that K.P. be committed to the DOC based upon the psychological assessment. While K.P.'s counsel argued placement in the DOC was a form of punishment that would not help place K.P. on the right track, he

acknowledged K.P. had many chances and numerous violations and that he needs services.

[25] The psychological assessment of K.P. concluded in part:

> His behavior is consistent with that of a young man who is used to doing what he wants for the most part due to lack of supervision and follow through. In conjunction with his limited cognitive functioning, ongoing and increasingly severe problems can be expected. Without a significant change in his situation, the prognosis is poor. It does not seem that even with increased support, that [K.P.'s] home will offer the necessary supervision and structure, so he may benefit from a residential program that can, plus provide training that may help him make a successful transition to adulthood.

State's Exhibit 1 at 12. The assessment recommended "placement in a secure facility that can provide behavioral structure, functional academics, and job training . . . ." *Id.*

[26] Based upon the record and under the circumstances, we conclude that the court's ordered placement is consistent with K.P.'s best interests and the safety of the community and find no abuse of discretion. *See D.E. v. State*, 962 N.E.2d 94, 97 (Ind. Ct. App. 2011) (holding the juvenile court did not abuse its discretion in placing D.E. in a DOC facility where earlier attempts to rehabilitate his behavior were unsuccessful).

[27] For the foregoing reasons, we affirm the juvenile court.

[28] Affirmed.

Vaidik, J., and Pyle, J., concur.