In the Matter of G.B., A Child Alleged to be in Need of Services, Parents, Gary Berry and Theresa Yardley, Appellants–Respondents,

v.

**DEARBORN COUNTY DIVISION OF FAMILY AND CHILDREN,** Appellee–Plaintiff.

No. 15A05–0101–JV–34.

Court of Appeals of Indiana.

Sept. 12, 2001.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Barbara A. Wyly, Lawrenceburg, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Gary Berry and Theresa Yardley appeal the trial court's order finding that, pursu-

ant to Indiana Code Section 31–34–215.6, reasonable efforts to reunify their son G.B. with them or preserve their family were not required.

We affirm.

### Issue

The sole issue presented for our review is whether Section 31–34–21–5.6 violates substantive due process under both the United States and Indiana Constitutions.

### Facts

G.B. was born on August 25, 2000. Because of Yardley's inconsistent prenatal care, and in compliance with the Indiana Meconium Screening Program, Dearborn County Hospital nurse Janet Moore collected G.B.'s meconium stool[1] for analysis. The analysis revealed the presence of cannabinoids in the stool. As a result, G.B. was removed from his parents and made a ward of the Dearborn County Office of Family and Children. (OFC). Following a detention hearing on September 12, 2000, the trial court authorized OFC to file a Child in Need of Services (CHINS) petition. OFC filed the petition on September 13, 2000, and the trial court held a fact finding hearing on October 3 and 18, 2000. One month later, on November 20, 2000, the trial court held a dispositional hearing wherein OFC asked the court to order G.B. to remain a ward of the court and to make a finding that reasonable efforts to reunify G.B. with his parents or to preserve his family were not required. At the conclusion of the hearing, the court stated that it was "going to continue this matter for further disposition until December 4, 2000." Transcript of November Hearing, p. 13.

That same day, the court issued an order on dispositional hearing ordering G.B. to remain a ward of OFC with placement and visitation at OFC's discretion. The court's order further provided that "reunification /or parent participation would be continued until December 4, 2000." Appellee's Appendix, p. 3. The court held another hearing on December 4, 2000. During the hearing, OFC presented evidence that the court had terminated the parents' parent-child relationship with three other children in 1998. On December 8, 2000, the court issued an order providing in pertinent part as follows:

> The CHINS petition comes on for a Dispositional Hearing ... The Court, has reviewed the predispositional report and has heard statements and evidence presented to the Court regarding the disposition of the case. The Court now finds that reasonable efforts to reunify this child with the child's parent ... or preserve this child's family are not required....

Appellant's Appendix, p. 9. It is from this order that the parents appeal.

### Analysis

As a preliminary matter, OFC argues that the court's December 8 order finding that reasonable efforts to reunify G.B. with his parents were not required is not an appealable order. Dispositional orders in CHINS proceedings are appealable final judgments. *Matter of M.R.*, 452 N.E.2d 1085, 1089 (Ind.Ct.App.1983). Here, OFC contends that the trial court's November 20 order was the dispositional order that should have been appealed. OFC characterizes the court's December 8 order as an unappealable "reasonable efforts ruling."

---

1. Toxicologist Michael Evans explained that meconium is "material that ... accumulates in the intestinal tract during fetal development ... the last trimester. It consists of fluids, cells ... slofted [sic] off cells in the GI tract, oils ... a variety of things, it's a mixture." Transcript of October Hearing, p. 51.

Appellee's Brief, p. 6. We disagree with OFC's characterization of the trial court's orders for the following reasons.

■ Our review of the record reveals that on November 20 the trial court held a dispositional hearing wherein OFC asked the court to order G.B. to remain a ward of the court and to make a finding that reasonable efforts to reunify G.B. with his parents or to preserve his family were not required. At the conclusion of the hearing, the court stated that it was "going to continue this matter for further disposition until December 4, 2000." Transcript of November Hearing, p. 13. Further, the court's order issued that same day ordered G.B. to remain a ward of the court and provided that "reunification/or parent participation would be continued until December 4, 2000." Appellee's Appendix, p. 3.

Following the December 4 hearing, the court issued an order which provides in pertinent part as follows: "The CHINS petition comes on for a Dispositional Hearing.... The Court, has reviewed the pre-dispositional report and has heard statements and evidence presented to the Court regarding the disposition of the case. The Court now finds that reasonable efforts to reunify this child with the child's parent ... or preserve this child's family are not required." Appellant's Appendix, p. 8.

Based upon the trial court's comments and orders, we conclude that the December 4 hearing was a continuation of the November dispositional hearing. Thus, the court's December 8 order, issued after the December 4 hearing, was an appealable dispositional order. *See M.R.,* 452 N.E.2d at 1089.

In 1980, Congress enacted the Adoption Assistance and Child Welfare Act. *See* 42 U.S.C. § § 620–628(b), 670–679(b). The Act authorizes federal subsidies to the States for the operation of their child welfare programs, but conditions that funding on certain requirements. *Phelps v. Sybinsky,* 736 N.E.2d 809, 813 (Ind.Ct.App. 2000), *trans. denied.* The case before us arises from a 1997 amendment to the Act that provides in pertinent part as follows:

> In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which . . .
>
> (15) provides that . . .
>
> (D) reasonable efforts of the type described in subparagraph (B) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that . . .
>
>> (iii) the parental rights of the parent to a sibling have been terminated involuntarily.

42 U.S.C. § 671.[2]

In response to the amendment, the General Assembly enacted Public Law No. 35–

---

**2.** The legislative history of the Act provides in pertinent part as follows:

[T]here seems to be a growing belief that Federal statutes, the social work profession, and the courts sometimes err on the side of protecting the rights of parents. As a result too many children are subjected to long spells of foster care or are returned to families who reabuse them.

The bipartisan group that wrote this legislation recognized the importance and essential fairness of the reasonable efforts criterion. What is needed is not a wholesale reversal of reasonable efforts or of the view that government has a responsibility to help troubled families solve the problems that lead to child abuse or neglect.... Rather than abandoning the Federal policy of helping troubled families, what is needed is a measured response to allow States to adjust their statutes and practices so that in some circumstances States will be able to move more efficiently toward terminating parental rights and placing children for adoption.

Thus, the Committee bill would require States to define "aggravated circumstances," such as ... chronic abuse, or sexual abuse, in which States are allowed to bypass the Feder-

1998, which is now codified at Indiana Code 31–34–21–5.6 and provides in pertinent part as follows:

(b) Reasonable efforts to reunify a child with the child's parent ... or to preserve a child's family ... are not required if the court finds ...

(4) The parental rights of a parent with respect to a biological or adoptive sibling of a child who is a child in need of services have been involuntarily terminated by a court under:

(A) Ind.Code 31–35–2 (involuntary termination involving a delinquent child or a child in need of services)....

Berry and Yardley argue that this statute is unconstitutional because it "violates the Due Process Clauses of both the Indiana[3] and United States[4] Constitutions." Appellant's Brief, p. 5. Specifically, they posit that the statute "violates [their] substantive due process rights by infringing upon their fundamental right to family integrity." Appellant's Brief, p. 6.

Whether a statute is constitutional on its face is a question of law. *State v. Moss–Dwyer*, 686 N.E.2d 109, 110 (Ind. 1997). When the issue presented on appeal is a pure question of law, we review the matter de novo. *Id.* Further, legislation under constitutional attack is clothed in a presumption of constitutionality. *Matter of Tina T.*, 579 N.E.2d 48, 56 (Ind. 1991). The challenger has the burden to rebut this presumption. *Id.* All reasonable doubts must be resolved in favor of an act's constitutionality. *Id.* When a statute can be so construed to support its constitutionality, we must adopt such a construction. *Id.*

Federal and state substantive due process analysis is identical. *N.B. v. Sybinski*, 724 N.E.2d 1103, 1112 (Ind.Ct. App.2000), *trans. denied.* In setting forth a claim for a violation of substantive due process, a party must show either that the law infringes upon a fundamental right or liberties deeply rooted in our nation's history or that the law does not bear a substantial relation to permissible state objectives. *Id.*

The United States Constitution recognizes a fundamental right to family integrity. *Pence v. Pence*, 667 N.E.2d 798, 800 (Ind.Ct.App.1996); *Matter of Joseph*, 416 N.E.2d 857, 859 (Ind.Ct.App.1981). "Indeed, the courts of this state have long and consistently held that the right to raise one's children is essential, basic, more precious than property rights, and within the protection of the Fourteenth Amendment to the United States Constitution." *E.P. v. Marion Co. Office of Family and Children*, 653 N.E.2d 1026, 1031 (Ind.Ct.App.1995).

Because Yardley and Berry have a fundamental right to family integrity, we must strictly construe the challenged statute. *See Indiana Dep't of Envtl. Mgmt. v. Chemical Waste Mgmt., Inc.*, 643 N.E.2d 331, 337 (Ind.1994) (noting that laws that burden the exercise of

---

al reasonable efforts criteria and instead would be required to make efforts to place the child for adoption. In addition, States would be required to bypass reasonable efforts to provide services to families if the parent ... has another child for whom parental rights were involuntarily terminated.
  House Report No. 105–77, April 28, 1997, Cong. Record Vol. 143 (1997), "Purpose and Scope," Page 8.

**3.** The Due Course of Law Provision provides in pertinent part that "every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Ind. Const., art. 1, § 12.

**4.** The Due Process Clause provides in pertinent part that "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 2.

fundamental rights "receive the strictest scrutiny"). Under the strict scrutiny standard, a statute must serve a compelling state interest and be narrowly tailored to serve that interest. *Crafton v. Gibson*, 752 N.E.2d 78, 91 (Ind.Ct.App., 2001).

We have previously found that a parent's fundamental right to raise his or her child without undue interference from the state is not unlimited because the state has a compelling interest in protecting the welfare of children. *Matter of E.M.*, 581 N.E.2d 948, 952 (Ind.Ct.App.1991), *trans. denied.* When parents neglect, abuse, or abandon their children, the state has the authority under its parens patriae power to intervene. *Id.* This statute serves that compelling interest.

Further, the challenged statute is not more intrusive than necessary to protect the welfare of children. Specifically, the statute is narrowly tailored to include only those parents who have had at least one chance to reunify with a different child through the aid of governmental resources and have failed to do so. As the California Court of Appeals has pointed out, "[e]xperience has shown that with certain parents ... the risk of recidivism is a very real concern. Therefore, when another child of that same parent is adjudged a dependent child, it is not unreasonable to assume that reunification efforts will be unsuccessful." *In re Baby Boy H.*, 63 Cal.App. 4th 470, 478, 73 Cal.Rptr.2d 793 (1998), *review denied.*

Because Indiana Code Section 31–34–21–5.6 serves a compelling state interest and is narrowly tailored to serve that interest, it does not violate substantive due process under the Indiana and United States Constitutions.

The Superior Court of Connecticut reached a similar result in *In re Sheneal W. Jr.*, 45 Conn.Supp. 586, 728 A.2d 544 (1999). In *Sheneal*, the parents argued that the retroactive application of a statute that permitted the court to terminate a parent's rights if a parent committed an assault that resulted in serious bodily injury to another child of the parent violated their due process rights. Applying a strict scrutiny review because of the family's fundamental right to family integrity, the court found that the state had a compelling interest in protecting children. *Id.* at 552. The court further found that the statute was narrowly tailored to serve that interest because it applied "only to a parent who has committed an intentional assault that results in the serious injury to a child of the parent." *Id.* The court therefore found no violation of the parents' due process rights. *See also In Interest of Amanda A.*, 194 Wis.2d 627, 534 N.W.2d 907 (1995), *review denied* (holding that statute providing for termination of parental rights following the intentional homicide of one parent by the other parent survived strict scrutiny review because it furthered the state's compelling interest in protecting the welfare of children and was narrowly tailored to include only those parents convicted of such a homicide).

We further note that even if the trial court finds that reasonable reunification efforts are not required, the court and OFC are still required to follow the statutory procedures in both CHINS and termination cases. For example, in a CHINS case, the trial court must hold a detention hearing after notifying the child's parents of the time, place, and purpose of the hearing. Ind.Code § 31–34–5–1. If the court authorizes OFC to file a CHINS petition, the court must hold an initial hearing on the petition and issue a summons to the parents. Ind.Code § 31–34–10–2. Thereafter, the court must hold fact finding, dispositional and permanency hearings. Ind.Code § 31–34–10–9; Ind. Code § 31–34–21–7.

In a termination of parental rights case, the court must hold a hearing wherein OFC is required to present clear and convincing evidence to establish the elements of Indiana Code Section 31–35–2–4(b)(2). *Matter of K.H.*, 688 N.E.2d 1303, 1304 (Ind.Ct.App.1997). Indiana Code Section 31–34–21–5.6 does not relieve OFC of this statutory burden. *See In re George Glen B., Jr.*, 207 W.Va. 346, 532 S.E.2d 64, 72 (2000) (although statute provided that Department of Health and Human Resources had duty to file petition for termination of parental rights of parent who had previously had parental rights to another child terminated, DHHR continued to bear burden to prove subject child was abused or neglected). We are satisfied that there are statutory safeguards in place to assure that parents receive a full and fair hearing.

## Conclusion

Indiana Code Section 31–34–21–5.6 does not violate substantive due process under the United States and Indiana Constitutions. It was therefore proper for the trial court to enter an order finding that reasonable reunification efforts were not required.

Affirmed.

MATTINGLY-MAY, J., and SULLIVAN, J., concur.