**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jul 20 2012, 8:53 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**DANIEL B. SCHUETZ**
Eggers Woods
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**DOUGLAS J. PURDY**
DCS, Bartholomew County Office
Columbus, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF D.P. and P.S., Minor Children,<br><br>A.P., Father,<br><br>    Appellant-Respondent,<br><br>        vs.<br><br>INDIANA DEPARTMENT OF CHILD SERVICES,<br><br>    Appellee-Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 03A01-1107-JT-309<br>)<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE BARTHOLOMEW CIRCUIT COURT
The Honorable Stephen R. Heimann, Judge
The Honorable Heather M. Mollo, Magistrate
Cause Nos. 03C01-1007-JT-1567, 03C01-1007-JT-1568

**July 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

A.P. ("Father") appeals the termination of his parental rights to D.P. and P.S. ("the children"). He asserts the court erred by terminating his rights without requiring DCS to provide reunification services. However, DCS did not provide services pursuant to a court order entered during the underlying CHINS proceedings finding services were not required because Father's rights to an earlier-born child had been terminated involuntarily. Father's challenge to that order denying him services is untimely and, moreover, fails on the merits. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

Father is the father of D.P., who was born July 13, 2004, and P.S., who was born April 2, 2006. The children were removed from the home of their mother, J.S., on July 24, 2009. DCS was unable to place the children with Father because Father "had substantiated reports of abuse and/or neglect." (Appellant's Br. at 8.)[1] DCS filed a Child in Need of Services ("CHINS") petition on July 27, 2009. The court found the children to be CHINS.

At the dispositional hearing, "[n]o specific services were ordered for [Father] as DCS indicated that it planned to file a Motion to Forego Reasonable Efforts for [Father] in accordance with IC 31-34-21-5.6." (*Id.*) DCS filed that motion on October 22, 2009, and served a copy on Father. The motion indicated Father's rights to another biological child had been involuntarily terminated, and attached to the motion was a certified copy of a file-

---

[1] We quote from the trial court's final order terminating the parent-child relationship between D.P. and Father. Counsel provided a copy of the final order regarding each child in the back of Appellant's Brief, but not in the Appendix; thus, we must cite the copies in the Brief. Because the termination orders regarding the two children are substantially similar, we quote and cite only one order.

stamped 2008 order involuntarily terminating Father's rights to a child, S.P. (*See* Appendix to Appellant's Br. at 7-12.)

The court set a hearing on DCS's proposed motion for November 16, 2009, and Father did not appear. The court found:

> [T]he parental rights of [Father] had been involuntarily terminated in relation to the child [S.P.]. The Court further found that [D.P.] was not bonded with his father and it was in the best interests of [D.P.] that DCS not make reasonable efforts to reunify the child with [Father].

(Appellant's Br. at 9.)

On July 22, 2010, DCS filed petitions to terminate Father's rights to the children. After a final hearing, the court entered the following findings and conclusions with regard to Father:

> 30. DCS was not required to provide any services to [Father] to assist in reunification. [Father] did not voluntarily participate in any services to assist in reunification. FCM Vreeland had some communication with [Father] in August 2009 and before DCS was aware of the prior involuntary termination of parental rights, Ms. Vreeland allowed one visit between [Father] and the boys. In her opinion, [Father] did not have a strong bond with [the children]. Ms. Vreeland had no further contact with [Father] during the rest of the time that she was assigned to the case.
> 31. Other court documents support the opinion of Ms. Vreeland regarding the lack of an observable bond between [Father] and the child. A paternity order dated April 27, 2009 involving [Father], [Mother] and [the children], totally abated all parenting time and visitation rights between [Father] and his sons. Certainly the lack of any contact between [Father] and [the childer] during the underlying CHINS has further strained any bond or connection [the children] may have had in the past with [Father].
> 32. FCM Howell's first communication with [Father] was at the initial hearing on the TPR petition on August 24, 2010. [Father] requested information on his children and FCM Howell sent him court reports in the mail.
> * * * * *
> 34. There is a reasonable probability that the conditions that resulted in the

3

child's removal or the reasons for the placement outside the parent's home will not be remedied. . . . . [Father] has not had regular visitation with his child and did not voluntarily participate in any services in order for safe reunification with the child in his care.

35. There is a reasonable probability that the continuation of the parent child relationship poses a threat to the well being of the child. . . . . [Father] did not maintain regular communication or visitation with DCS or his child during the course of the CHINS case. Prior to the CHINS case, he did not have regular visitation with the child. At this point, the child does not have a bond with [Father].

36. Termination is in the best interest of the child. FCM Howell and the CASA Ann Fahey agree that termination of the parent child relationship is in the best interests of the child. . . . . Each [child] has high needs and requires a high level of supervision.

\* \* \* \* \*

39. The DCS has a satisfactory plan for the care and treatment of the child, which is adoption.

### CONCLUSIONS OF LAW

The child has been removed from the parent's care for six (6) months under a dispositional decree and for fifteen (15) of the most recent twenty-two (22) months. There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for the placement outside the parent's home will not be remedied. There is a reasonable probability that the continuation of the parent child relationship poses a threat to the well being of the child. It is in the best interests of the child that the parent-child relationship be terminated. The DCS has a satisfactory plan for the care and treatment of the child.

(*Id*. at 13-15.) Based thereon, the court terminated Father's rights.

**DISCUSSION AND DECISION**

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B*., 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *In re K.S*., 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). The right

4

to raise one's own child should not be terminated solely because there is a better home available for the child, *id*., but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id*. at 836.

We review termination of parental rights with great deference. *Id*. We will not reweigh evidence or judge credibility of witnesses. *In re D.D*., 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S*., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *L.S*., 717 N.E.2d at 208.

Father asserts he should have been offered services prior to the termination of his rights to the children. Father did not receive services because the trial court granted DCS's motion to forego reasonable efforts after finding Father's rights to S.P., another child he fathered, were terminated involuntarily in 2008. *See* Ind. Code § 31-34-21-5.6 ("Reasonable

5

efforts to reunify a child with the child's parent . . . are not required if the court finds . . . [t]he parental rights of a parent with respect to a biological or adoptive sibling of a child who is a [CHINS] have been involuntarily terminated by a court . . . ."). The order granting DCS's motion to forego reasonable efforts to reunify Father with the children appears to have been an appealable dispositional order. *See G.B. v. Dearborn Cnty. Div. Of Family & Children*, 754 N.E.2d 1027, 1030 (Ind. Ct. App. 2001) (where court continued dispositional hearing to hear evidence regarding State's motion to forego reasonable efforts, as it would impact the parent participation plan included in the dispositional order, the "reasonable efforts ruling" was a final appealable order), *trans. denied*. The record before us contains no indication Father appealed the order that permitted DCS to forego reasonable efforts to reunite him with his children or the dispositional order that did not include services for him. As such, his allegation of error as to that CHINS dispositional order following termination of his rights is untimely. *See*, *e.g*., *Smith v. Marion Cnty. Dept. of Public Welfare*, 635 N.E.2d 1144, 1148 (Ind. Ct. App. 1994) ("Smith is presenting this issue for the first time on appeal following the termination proceedings, and this court has determined that the time for appealing an issue in a CHINS proceeding commences when the dispositional decree is entered."), *trans. denied*.

Nevertheless, in light of the record, we find no error in the trial court's grant of DCS's motion to forego reasonable efforts. Father alleges the trial court erred in granting that motion because the 2008 termination of his parental rights to S.P. was voluntary, rather than involuntary.

6

The order terminating Father's rights to S.P. clearly states it is an "Order of Involuntary Termination," (App. at 8), that comes following a "Petition for the Involuntary Termination of the Parent-Child Relationship . . . ." (*Id.*) One finding in that 2008 order does indicate the lawyer appointed to assist Father during the termination hearing reported to the court that Father's "girlfriend . . . advised that [Father] does not object to the termination of his parental rights." (*Id.*) Nevertheless, his lawyer also reported that he had "no authority" to act on behalf of Father, presumably because he had never spoken to Father directly, and therefore his lawyer requested permission to withdraw from the case. We decline Father's invitation to hold double hearsay presented in open court by a lawyer who had never spoken directly with Father could provide sufficient evidence to support an inference that Father voluntarily consented to terminate his constitutionally protected right to raise S.P. *See* Ind. Code § 31-35-1-6 (requiring, but for a few exceptions, "parents must give their consent in open court" to voluntarily terminate their parental rights). Furthermore, after Father declined to appear at that 2008 termination hearing to consent to the termination of his rights to S.P.,[2] DCS presented evidence and the trial court entered findings to support the involuntary termination of his rights. Thus, contrary to Father's assertion, the record supports the trial court finding the termination of his parental rights to S.P. in 2008 was involuntary.

That fact supports the trial court's order to forego services to Father in the CHINS proceedings underlying the instant termination of Father's parental rights to the children. As

---

[2] Nor is there any suggestion Father filed a written voluntary waiver of his parental rights to S.P.

that is the only ground on which Father challenges the court's order terminating his parental rights to the children, we affirm.

Affirmed.

CRONE, J., and BROWN, J., concur.