## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 21 2015, 10:02 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Megan B. Quirk
Public Defender
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Miller
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:

J.G. (Minor Child),

and

A.S. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

April 21, 2015

Court of Appeals Case No. 18A02-1409-JT-690

Appeal from the Delaware Circuit Court.
The Honorable Kimberly S. Dowling, Judge.
Cause No. 18C02-1401-JT-2

**Baker, Judge.**

[1] A.S. (Mother) appeals the judgment of the trial court terminating the parent-child relationship between Mother and J.G. (Child). Mother raises the following arguments on appeal: (1) the trial court erred in making a finding in the underlying Child in Need of Services (CHINS) case that the Department of Child Services (DCS) did not have to make reasonable efforts to reunify Mother and Child; and (2) there is insufficient evidence supporting the termination order. Finding that Mother has waived the first argument and finding sufficient evidence, we affirm.

## Facts

[2] Mother and G.G.J. (Father) are the parents of Child, who was born on November 7, 2012.[1] Mother and Father were also the parents of G.G., Child's older sibling. G.G. was found to be a CHINS in May 2011, and both parents' parental rights with respect to G.G. were terminated on July 23, 2013. Among other reasons, the trial court terminated the parent-child relationship in that case because of the "deeply disturbing, violent and troubled" relationship between Mother and Father, which involved frequent domestic violence that caused injuries to Mother. DCS Ex. 25 at 66-67.

---

[1] Father's parental rights with respect to Child were also terminated, but he did not appeal the termination order.

[3] On May 29, 2013, DCS removed Child from Mother's care,[2] and on June 3, 2013, DCS filed a petition alleging Child to be a CHINS based on allegations of domestic violence incidents occurring in Child's presence, the parents' history of domestic violence, Father's arrest on May 29 for a domestic violence incident, Mother's unstable housing, and the then-ongoing CHINS case involving G.G. After holding a factfinding hearing, on October 30, 2013, the trial court found that Child was a CHINS.

[4] On November 12, 2013, DCS filed a motion requesting that the trial court find that DCS was not required to make reasonable efforts to reunify or preserve Child's family pursuant to Indiana Code section 31-34-21-5.6. On January 24, 2014, the trial court granted DCS's motion, ordering DCS to cease any reasonable reunification or family preservation efforts. Following that order, all services except for visitation ceased. Mother continued to have the ability to have supervised visits with Child.

[5] On January 23, 2014, DCS filed a petition to terminate the parent-child relationship between Mother and Child. At the June 27, 2014, termination hearing, evidence was presented regarding the violent relationship between Mother and Father. Specifically, on April 18, 2013, Mother went to the doctor for what she thought was a fractured nose resulting from a domestic violence incident with Father. On May 29, 2013, Child was removed after Father

---

[2] Child has been in the same preadoptive foster home since he was removed on May 29, 2013. It is the same home where G.G. is placed. There is an adoption pending with respect to G.G. and the foster parents.

assaulted Mother in front of Child, resulting in Father's arrest. Throughout DCS's involvement with this family, Mother and Father have had an "on again, off again" relationship, but they always reunited, even after violent altercations. Tr. p. 79. While Father was incarcerated, he and Mother spoke on the phone ninety-four times, and at times, Mother said "I love you" to him on the phone. *Id.* at 91.

[6] At the termination hearing, DCS also presented evidence regarding Mother's inconsistent visitation with Child. Between June 2013 and February 2014, Mother's visits were supervised by Brandie Campbell. Campbell testified that during those months, Mother had the opportunity to have fifty-seven visits with Child, but attended only fifteen. *Id.* at 62. The visits were closed in February 2014 because of "too many cancellations and no shows." *Id.* at 61.

[7] After Campbell's agency closed Mother's visits, DCS referred her visits to another agency. Between February 20, 2014, until June 27, 2014, Mother had the opportunity to have twenty-one visits with Child, but attended only fourteen. *Id.* at 53.

[8] Since this family has been involved with DCS, Mother has engaged in criminal activity. In June 2012, Mother was charged with class D felony theft and class A misdemeanor conversion; she pleaded guilty to class A misdemeanor conversion in June 2013. In December 2013, Mother was charged with class A misdemeanor conversion. Her probation was revoked as a result of the new offense, and in March 2014, she pleaded guilty to class A misdemeanor

conversion. In April 2014, she was charged with class D felony theft. At the time of the termination hearing, Mother had yet to pay the fine or complete the community service for her March 2014 conversion conviction.

[9] After the termination petition was filed, Mother repeatedly tested positive for illegal substances and prescription medication for which she did not have a prescription. On March 18, 2014, she tested positive for benzodiazepine, oxycodone, and tramadol. On March 26, 2014, she tested positive for benzodiazepine and THC. On June 10, 2014, she tested positive for THC. Mother was taking these illicit substances notwithstanding her knowledge, as of March 2014, that she was pregnant and due in October 2014.

[10] DCS also presented evidence at the termination hearing that Mother has not achieved stability. She had four different residences during the underlying CHINS case. She was evicted from one of her residences in November 2013. At the time of the termination hearing, Mother had been living with her mother for approximately one month. At that time, Mother was unemployed. Over the course of the underlying CHINS case, Mother gave the Family Case Manager (FCM) ten different phone numbers at which she could be reached.

[11] Child is placed in a preadoptive foster home with G.G., his brother. Child "is very bonded to his older brother." DCS Ex. 13 at 33. The FCM and Child's Court Appointed Special Advocate (CASA) testified that they believe it is in Child's best interests for the parent-child relationship with Mother to be terminated and for Child to be adopted by his current foster family. On August

28, 2014, the trial court issued an order terminating the parent-child relationship between Mother and Child. Mother now appeals.

# Discussion and Decision

# I. No Reasonable Efforts Order

Mother focuses much of her argument on the trial court's January 24, 2014, order in the CHINS case that DCS was no longer required to make reasonable efforts to reunify the family. A trial court's order finding that reasonable efforts are not required is a final, appealable order. *G.B. v. Dearborn Cnty. Div. of Family and Children*, 754 N.E.2d 1027, 1029-30 (Ind. Ct. App. 2001). Mother did not appeal that order or otherwise raise this issue until now. *See* Ind. Appellate Rule 9(A) (requiring that a notice of appeal must be filed within thirty days of entry of a final judgment). Consequently, she has waived this issue.

Waiver notwithstanding, we note briefly that Indiana Code section 31-34-21-5.6 provides that the trial court "may" find that DCS is not required to make reasonable efforts to reunify a family when, among other things, "the parental rights of a parent with respect to a biological or adoptive sibling of a child who is a [CHINS] have been involuntarily terminated by a court under: (A) IC 31-35-2 (involuntary termination involving a . . . [CHINS])[.]" Here, it is undisputed that the parent-child relationship between Child's older sibling, G.G., and Mother, was involuntarily terminated in the past. Therefore, it was within the trial court's discretion to grant or deny DCS's request for a no reasonable efforts finding. We see no basis in the record to conclude that the

trial court abused its discretion in granting DCS's motion in this case. Consequently, even if the appeal of this issue had been timely, Mother would not have succeeded with this argument.

## II. Termination Order

## A. Standard of Review

[14] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[15] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

(A) that one (1) of the following is true:

    (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

    (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence.

*K.T.K.*, 989 N.E.2d at 1230.

[16] In this case, Mother spends the vast majority of her brief presenting argument related to the no reasonable efforts finding. The remainder of her brief includes

little to no argument, and no citation to authority or the record, regarding the elements of the termination statute set forth above. Based upon her list of issues in the brief's concluding paragraph, we discern that Mother is challenging the trial court's findings that there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied, that the continuation of the parent-child relationship poses a threat to Child's well-being, and that termination is in Child's best interests.

## B. Conditions Resulting in Removal

In considering this issue, a juvenile court must judge a parent's fitness to care for his or her children at the time of the termination hearing. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). The juvenile court may, however, take into consideration the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the children. *Id.* Among other things, a juvenile court may consider a parent's criminal history, substance abuse history, and lack of adequate housing. *McBride v. Monroe Cnty. Office of Family and Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

In this case, Child was removed from Mother because of past and present domestic violence between Mother and Father, Mother's unstable housing situation, and the then-ongoing CHINS case with G.G. Regarding Mother's habitual patterns of conduct, the record reveals the following facts that arose during G.G.'s CHINS case:

- Mother did not make any progress in services with respect to her parenting skills.
- Mother missed eleven of fifteen counseling sessions.
- Mother failed to maintain stable housing or a stable source of income. During the course of that CHINS case, Mother lived in fourteen different locations. Mother also failed to obtain her GED.
- Mother continued to be in a violent relationship with Father.
- Despite participating with services for two years, Mother made no sustainable progress in creating an environment suitable for G.G.
- Mother's rights to G.G. were involuntarily terminated.

[19] In the course of the instant CHINS case related to Child, the record reveals the following evidence regarding Mother:

- Mother repeatedly engaged in criminal activity.
- Mother repeatedly used illegal substances despite being aware that she was pregnant.
- Mother continued to be in a romantic relationship with Father while he was incarcerated for assaulting her in Child's presence.
- Mother failed to maintain stable housing or income.
- Mother failed to attend the vast majority of her visitation sessions with Child.

[20] In other words, the record establishes that despite years of contact with DCS and participation with services, Mother has failed to make progress on any of the reasons DCS became involved with Child. Given this record, we find that the juvenile court did not err by finding that DCS proved by clear and convincing evidence that there is a reasonable probability that the conditions that led to Child's removal from Mother's care would not be remedied.

# C. Threat to Child's Well-Being

[21] Mother also appears to argue that the trial court erred in finding that continuation of the parent-child relationship posed a threat to Child's well-being. In considering this element, the trial court "need not wait until a child is irreversibly influenced by a deficient lifestyle such that her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). A parent's inability to meet the case plan requirements is sufficient evidence to satisfy this element of the termination statute. *In re A.K.*, 924 N.E.2d 212, 221 (Ind. Ct. App. 2010).

[22] In this case, DCS proved that Mother and Father have a history of domestic violence. It is well established that exposure to domestic violence is harmful to children, even if the child is an infant. *In re E.M.*, 4 N.E.3d 636, 644-45 (Ind. 2014). Furthermore, the record reveals that Mother and Father engaged in domestic violence in the Child's presence on at least one occasion.

[23] Additionally, the record reveals that Mother continued to engage in substance abuse and criminal activity, failed to participate with visits with Child, and failed to achieve and maintain housing and income stability. This evidence is sufficient to conclude that the juvenile court did not err by finding that DCS proved by clear and convincing evidence that there is a reasonable probability that the continuation of the parent-child relationship posed a threat to Child's well-being.

# D. Child's Best Interests

Finally, Mother seems to argue that the trial court erred by finding that termination is in Child's best interests. In considering this factor, we must look to the totality of the evidence, subordinating the interests of the parent to those of the children. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013). Furthermore, "we have previously held that the recommendation by both the case manager and child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests." *Id.* at 1158-59.

In this case, both the FCM and the CASA testified that in their respective opinions, termination was in Child's best interests. And we have already found herein that evidence of Mother's habitual patterns of conduct, substance abuse, criminal activity, instability, domestic violence, and failure to participate fully with visits established that the conditions resulting in removal will not be remedied. We also note that Child is placed in a loving preadoptive home with his biological sibling, to whom he is strongly bonded. Consequently, we find that the trial court did not err by concluding that DCS proved by clear and convincing evidence that termination is in Child's best interests.

The judgment of the trial court is affirmed.

Najam, J., and Friedlander, J., concur.