# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 10 2020, 11:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT W.J.

Michael B. Troemel
Lafayette, Indiana

ATTORNEY FOR APPELLANT M.R.
Jennifer L. Schrontz
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Frances H. Barrow
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of W.J.J (Minor Child)

and

W.J. and M.R. (Parents),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

June 10, 2020

Court of Appeals Case No. 19A-JT-2736

Appeal from the Tippecanoe Superior Court

The Honorable Nancy L. Gettinger, Senior Judge

Trial Court Cause No. 79D03-1908-JT-120

**Bradford, Chief Judge.**

# Case Summary

M.R. ("Mother") and W.J. ("Father") (collectively, "Parents") are the biological parents of W.J.J. ("Child"). Prior to Child's birth, Parents' parental rights to another child were terminated. Since his birth, Child has twice been adjudicated to be a Child in Need of Services ("CHINS"). During the second set of CHINS proceedings, the Department of Child Services ("DCS") requested that the juvenile court find that it was no longer required to make reasonable efforts to preserve and reunify the family pursuant to Indiana Code section 31-34-21-5.6(b) ("the No Reasonable Efforts Statute"). Following a hearing, the juvenile court granted DCS's motion. DCS subsequently filed a petition to terminate Parents' parental rights to Child. Parents appeal the juvenile court's order granting DCS's petition. In challenging the termination of their parental rights to Child, Parents contend that the No Reasonable Efforts Statute is unconstitutional. Because we conclude otherwise, we affirm.

# Facts and Procedural History

Parents are the biological parents of Child, who was born on October 26, 2017. Child was adjudicated to be a CHINS at birth after his cord tissue tested positive for morphine. The case was successfully closed with reunification with Mother on June 4, 2018.

[3] On March 21, 2019, DCS received a report alleging that Child was a victim of neglect due to substance abuse by Mother. On April 1, 2019, Mother was observed to be under the influence while acting as Child's sole caregiver. Mother submitted to a drug screen which "returned positive for methamphetamine and fentanyl." Ex. Vol. I, p. 26. On April 4, 2019, DCS removed Child from Mother's care. At the time, Mother "appeared to be under the influence of substances as evidenced by the following: hand tremors, excessive nervousness, sweating, difficulty keeping eyes open, and she could not follow a clear timeline." Ex. Vol. I, p. 26.

[4] A few days later, DCS filed a second petition alleging that Child was a CHINS. In this petition, DCS indicated that Mother was the sole caregiver of Child because Father was incarcerated.[1] Mother "admitted to being an addict, and indicated [that] she [did] not want to participate in a residential or outpatient treatment program[] for her substance[-]abuse issues." Ex. Vol. I, p. 26. DCS also outlined Mother's history of substance-abuse issues and neglect, stating as follows:

> p. Mother was a perpetrator of neglect on 01/22/10 due to caregiver impairment with use of marijuana for 2 reports, other minors were the Victims; an out-of-home CHINS was filed and opened, and the case was successfully closed with reunification on 07/09/10.

---

[1] The record reveals that Father was incarcerated for the entirety of the underlying CHINS and termination proceedings, with the possible exception of a few days. His current release date is scheduled for May 18, 2022. *See* https://www.in.gov/apps/indcorrection/ofs/ofs?previous_page=1&detail=163009 (last visited May 28, 2020).

q. Mother was a perpetrator of neglect on 11/22/13 due to caregiver impairment with use of marijuana and cocaine, another minor was the Victim; an out-of-home CHINS was filed and opened and ended with reunification with [the child's] father in that case.

r. Mother was a perpetrator of neglect on 12/02/14 due to caregiver impairment with use of marijuana and cocaine, other minors were the victims; an out[-]of[-]home CHINS was filed and opened and the case was closed with TPR and adoption.

Ex. Vol. I, p. 26. The juvenile court subsequently adjudged the Child to be a CHINS.

[5] On June 13, 2019, DCS filed a motion in which it requested that the juvenile court "issue an order finding that [DCS] is not required to make reasonable efforts to preserve and reunify the family" pursuant to the No Reasonable Efforts Statute. Appellants' App. Vol. II p. 19. Parents objected to DCS's motion. Following a hearing, the juvenile court granted DCS's motion. Child's permanency plan was subsequently changed to adoption.

[6] On August 7, 2019, DCS filed a petition to terminate Parents' parental rights to Child. The juvenile court conducted an evidentiary hearing on October 16, 2019, after which it took the matter under advisement. On October 24, 2019, the juvenile court entered an order terminating Parents' parental rights to Child.

# Discussion and Decision

[7] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their child. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their parental responsibilities. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Parental rights, therefore, are not absolute and must be subordinated to the best interests of the child. *Id.* Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent–child relationship. *Id.*

[8] In appealing from the termination of their parental rights to Child, Parents do not challenge the sufficiency of the evidence to support the juvenile court's order.[2] Instead, they challenge the constitutionality of the No Reasonable Efforts Statute.

> Whether a statute is constitutional on its face is a question of law. When the issue presented on appeal is a pure question of law, we review the matter de novo. Further, legislation under constitutional attack is clothed in a presumption of

---

[2] Parents challenge only one of the juvenile court's finding, that being that Father was offered services while incarcerated. Parents, however, do not challenge any of the juvenile court's other findings or conclusions and, as such, we accept the juvenile court's findings as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) (providing that unchallenged findings of the trial court must be accepted as correct).

constitutionality. The challenger has the burden to rebut this presumption. All reasonable doubts must be resolved in favor of an act's constitutionality. When a statute can be so construed to support its constitutionality, we must adopt such a construction.

*G.B. v. Dearborn Cty. Div. of Family & Children*, 754 N.E.2d 1027, 1031 (Ind. Ct. App. 2001) (internal citations omitted). The No Reasonable Efforts Statute provides in relevant part,

> Reasonable efforts to reunify a child with the child's parent, guardian, or custodian or preserve a child's family … are not required if the court finds any of the following:
> ****
> (4) The parental rights of a parent with respect to a biological or adoptive sibling of a child who is a child in need of services have been involuntarily terminated by a court under:
>> (A) IC 31-35-2 (involuntary termination involving a delinquent child or a child in need of services)[.]

Indiana Code § 31-34-21-5.6(b).

[9] Parents challenge the constitutionality of the No Reasonable Efforts Statute on due process grounds. "Federal and state substantive due process analysis is identical." *G.B.*, 754 N.E.2d at 1031. "In setting forth a claim for a violation of substantive due process, a party must show either that the law infringes upon a fundamental right or liberties deeply rooted in our nation's history or that the law does not bear a substantial relation to permissible state objectives." *Id.* In concluding that the No Reasonable Efforts Statute did not violate a parent's due process rights, we stated the following:

> We have previously found that a parent's fundamental right to raise his or her child without undue interference from the state is not unlimited because the state has a compelling interest in protecting the welfare of children. When parents neglect, abuse, or abandon their children, the state has the authority under its parens patriae power to intervene. This statute serves that compelling interest.
>
> Further, the challenged statute is not more intrusive than necessary to protect the welfare of children. Specifically, the statute is narrowly tailored to include only those parents who have had at least one chance to reunify with a different child through the aid of governmental resources and have failed to do so….
>
> Because Indiana Code Section 31-34-21-5.6 serves a compelling state interest and is narrowly tailored to serve that interest, it does not violate substantive due process under the Indiana and United States Constitutions.

*Id.* at 1032 (internal citations omitted). We reached the same conclusion in *Matter of S.G. v. Indiana Department of Child Services*, 67 N.E.3d 1138, 1145 (Ind. Ct. App. 2017).

[10] Parents "concede[] that the [No Reasonable Efforts Statute] has been upheld several times" but "urge this court to review the constitutionality of this statute through the eyes and perspective of the child." Appellants' Br. p. 8. In support, Parents assert that Child had a due process right to be raised by his biological parents. Parents cite to no authority for this proposition, and our research has uncovered none. Parents merely argue that Child "should have been given the opportunity for his parents to succeed, despite their past failings in the prior

involuntary TPR" and for Child, "there has been a rush to judgment." Appellants' Br. p. 13.

[11] To the contrary, we agree with DCS that "[f]ar from rushing to judgment, DCS has spent years working with Parents and their children." Appellee's Br. p. 25. Parents have not demonstrated an ability to remedy the reoccurring issues that have led to the removal of multiple children from their care. The Indiana Supreme Court, noting a child's interest in and need for permanency, has held that "children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011). "A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children." *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007). Parents have demonstrated both a historical and current inability to provide a safe and suitable living environment for Child. As such, considering the applicability of the No Reasonable Efforts Statute from Child's perspective would warrant the same result.

[12] The judgment of the juvenile court is affirmed.

Baker, J., and Pyle, J., concur.