

IN THE

# Court of Appeals of Indiana

In the Matter of N.C. (Minor Child),

*A Child in Need of Services*

and

D.C. (Father),

*Appellant-Respondent*



FILED

May 12 2026, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

and

Kids' Voice of Indiana,

*Appellee-Guardian Ad Litem*

May 12, 2026

Court of Appeals Case No.
25A-JC-2526

Appeal from the Marion Superior Court

The Honorable Tara Y. Melton, Judge

The Honorable Leon A. Keith, Magistrate

Trial Court Cause No.
49D15-2501-JC-750

**Scheele, Judge.**

## Case Summary

[1] D.C. (Father) appeals, following the trial court's determination that his daughter, N.C. (Child), is a Child in Need of Services (CHINS). Father raises four issues, which we restate as the following three:

1. Whether Indiana Code section 31-34-21-5.6 is unconstitutional;

2. Whether the court abused its discretion in entering a no reasonable efforts finding and denying Father's motion to reconsider;

3. Whether the evidence was sufficient to prove Child is a CHINS.

We affirm.

## Facts and Procedural History

[2] In May 2006, Father was convicted of molesting J.C., his then eight-year-old daughter. His conviction was classified as Class C felony child molesting pursuant to Indiana Code section 35-42-4-3(b) (2006), and he was required to register on Indiana's Sex and Violent Offender Registry (Sex Offender Registry)

for life. *See* Petitioner's Ex. 2; Tr. Vol. II pp. 10-11. Father later told J.C. that she "ruined his life" by reporting the sexual abuse because he "can't get a job, a house, [a] car . . . because of his felony" conviction. *Id.* at 83. When J.C. was an adult, Father said he molested her because she "was his first child and that he did not know how to love [her] correctly and that drugs controlled his life[.]" *Id.* at 84.

[3] In December 2020, Child was born to Father and S.C. (Mother).[1] Father struggled with housing stability and registered as "homeless" on the Sex Offender Registry four or five times between 2021 and 2025. *Id.* at 36. And from May 2023 through March 2024, Father was incarcerated following a possession of cocaine conviction; Mother was Child's primary caregiver during that time.

[4] In October 2024, the Indiana Department of Child Services (DCS) assessed a report that alleged concerns for homelessness and Mother's mental health. DCS initially learned that Mother was leasing a home and could provide appropriate shelter for Child. At that time, Father was not living with Mother and Child. However, sometime during the assessment, Mother was admitted to a "mental institution" for treatment. *Id.* at 14.

[5] On October 19, Father asked his adult daughter, J.C., to keep Child until "DCS fell off his back." *Id.* at 93. Although Father later asserted that Child was not

---

[1] Mother died in March 2025.

supposed to stay with J.C. long-term, J.C. believed the "intent" was for her to keep Child longer. *Id.* at 76. When J.C. picked up Child, Father only provided a car seat and a bag of diapers. Because Mother had services and Child had a safe place to stay, DCS ultimately unsubstantiated the assessment with Father's safety plan "that he was not going to be around" if Child returned from J.C.'s to Mother's home. *Id.* at 140.

[6] While Child was with J.C., she discovered Child had a "yeast infection, [a] UTI," and about seven "green oozing" sores from "staph infection all over her body." *Id.* at 90, 78. Father had medication for the staph infection, but he did not give it to J.C. until a couple of days after J.C. took Child. J.C. also observed Child display "sexually maladaptive" behaviors including undressing dolls and making them kiss, inappropriately touching J.C.'s daughter in the bathtub, and "humping" a broomstick. *Id.* at 80, 81. On one occasion, J.C. found Child in her room touching herself in a "sexually inappropriate way" with "her pants under her knees[.]" *Id.* at 80. Another time, Child put two lip gloss tubes in her pants and was "playing in her bottom with them[;]" J.C. clarified Child put the tubes "[n]ot inside, but [was] just playing." *Id.* at 82.

[7] In January 2025, DCS assessed a new report with concerns that Child was sexually abused. Child, then four, underwent a forensic examination at Riley Children's Hospital that did not reveal "acute abnormal findings" of sexual abuse. *Id.* at 175. Child also participated in a forensic interview but made no disclosures of sexual abuse. When Family Case Manager (FCM) Haley Shipp spoke with Father about the assessment, he smelled of "cigarettes and alcohol."

*Id.* at 114. Father denied the reported allegations but disclosed that he was living in his car. Because FCM Shipp had concerns regarding Father's substance use due to his criminal history, she asked him to complete a drug screen, but he refused. FCM Shipp also learned that Father had a prior substantiated assessment for sexual abuse of his older daughter, J.C. *See* App. Vol. II p. 26.

[8] DCS filed a petition alleging Child was a CHINS because of parents' inability, refusal, or neglect to provide Child with necessities and Child permanently resided in a household with Father, who had committed child molesting. On January 28, the trial court authorized Child's removal from Father and Mother. Due to J.C.'s concerns about Child inappropriately touching her daughter, Child was placed in kinship care with another relative. Prior to a factfinding hearing on the petition, FCM Jessica Frye took over the case. Child underwent an educational evaluation and was diagnosed with a "developmental delay in language impairment categories." Tr. Vol. II p. 52. She was recommended to attend special education services and a developmental preschool.

[9] FCM Frye also referred Father to home-based casework, home-based therapy, random drug screens (due to concerns about Father's prior substance use), and father's engagement services. Father attended one therapy session. Because he did not participate in the other services and discontinued therapy, he was unsuccessfully discharged from services. Father also failed to communicate with FCM Frye despite her weekly attempts to contact him; thus, she was

unable to set up a child and family team meeting with Father. Then, after Mother passed away in March, Father told FCM Frye to leave him alone.

[10] In May, DCS motioned for a hearing pursuant to Indiana Code section 31-34-21-5.6 (the NRE statute), alleging reasonable efforts were not required because Father was previously convicted of child molesting as described in section 5.6 and that Father was required to register as a sex or violent offender. DCS requested the court find that reasonable efforts to reunify Child with Father "are not required, proceed to disposition and order no services, and change the permanency plan to adoption[.]" App. Vol. II p. 107.

[11] On May 16 and 21, the court held a factfinding hearing on the CHINS petition and the NRE motion. Regarding the latter, Father argued a NRE finding is discretionary and noted he had been rehabilitated since his conviction approximately twenty years earlier. He also argued the NRE Statute violated his constitutional right to due process and that a NRE finding was not in Child's best interests.

[12] While the parties awaited the court's factfinding order, Father began participating in therapy. He attended four sessions total, one in July and three in August. On August 7, the court adjudicated Child a CHINS. The court found Father was convicted of child molesting as the NRE Statute described and was required to register as a sex offender under Indiana Code section 36-2-13-5.5. Thus, the court found that reasonable efforts to reunify Child with Father were not required. Thereafter, DCS canceled Father's therapy referral.

On August 25, Father moved to reconsider the NRE finding, arguing "material changes" since the May factfinding, including that he obtained housing and engaged in therapy, and requested that DCS be ordered to provide services and "case management tasks" including Child and Family Team meetings. *Id.* at 166, 167. At a hearing on Father's motion, Father's therapist said Father "had to show me that he was going to show up to do the work and if I saw some progress, then I would make a recommendation based on what I thought was appropriate at the time." Tr. Vol. II p. 228. The court denied Father's motion to reconsider the NRE finding and, in its dispositional order, again found that DCS was not required to make reasonable efforts to reunify. In a separate order, the court changed Child's permanency plan to adoption. Father now appeals.

## Discussion and Decision

### I. Statutory Background and The NRE Statute

As we recently summarized,

> States, through their child welfare programs, are required to use "reasonable efforts ... to preserve and reunify families" in order to receive federal grants for foster care, prevention, and permanency. 42 U.S.C. § 671(a)(15)(B). However, states may codify aggravated circumstances under which a court may order that such reasonable efforts are no longer required. *See* 42 U.S.C. § 671(a)(15)(D). This requirement and these circumstances are codified in Indiana Code sections 31-34-21-5.5 (reasonable efforts) and 31-34-21-5.6 (no reasonable efforts).

*Matter of P.F.*, 268 N.E.3d 777, 780 (Ind. Ct. App. 2025). Section 5.6, i.e. the NRE Statute, lists instances in which a court may find that DCS is not required to make reasonable efforts to reunify. In 2024, subsection 5.6(b)(2) was amended to include, in relevant part, that reasonable efforts are not required if a parent:

> (C) is required to register:
>
>> (i) as a sex offender under 34 U.S.C. 20913; or
>>
>> (ii) as a sex or violent offender under IC 36-2-13-5.5; or
>
> (D) committed an offense described in IC 31-34-1-3 or IC 31-34-1-3.5 against a child and the offense resulted in a conviction or a judgment under IC 31-34-11-2.

Ind. Code § 31-34-21-5.6(b)(2)(C)-(D) (2024). The constitutionality of this portion of the amended statute has yet to be interpreted by this court. Initially, we note it is undisputed that Father is required to register as a sex offender under Indiana Code section 36-2-13-5.5 and that he was convicted of committing an offense described in Indiana Code section 31-34-1-3 against a child, namely Class C felony child molesting pursuant to Indiana Code section 35-42-4-3(b) (2006).

## II. Due Process

### A. Facial Constitutionality

Father contends the NRE Statute is unconstitutional on its face and as applied because it violates his substantive and procedural due process rights.[2] Whether a statute is constitutional on its face is a question of law that we review de novo. *G.B. v. Dearborn Cnty. Div. of Family and Children*, 754 N.E.2d 1027, 1031 (Ind. Ct. App. 2001), *trans. denied*. Further, legislation is presumed to be constitutional, and any reasonable doubts are construed in favor of constitutionality. *Id.*

> Article 1, Section 12 of the Indiana Constitution provides that "every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Similarly, Section 1 of the Fourteenth Amendment to the United States Constitution stipulates that no State shall "deprive any person of life, liberty, or property, without due process of law."
> The analysis for federal and state substantive due process claims is identical. *G.B.*, 754 N.E.2d at 1031. In order to succeed on [his] claim, [Father] "must show either that the [NRE Statute] infringes upon a fundamental right or liberties deeply rooted in our nation's history or that the law does not bear a substantial relation to permissible state objectives." *Id.*

*Matter of S.G.*, 67 N.E.3d 1138, 1145-46 (Ind. Ct. App. 2017).

---

[2] The State argues Father's facial challenge is waived because he raises this challenge for the first time on appeal. *See Plank v. Cmty. Hosps of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013) (failure to challenge constitutional claims before the trial court results in waiver on appeal). However, appellate courts are not prohibited from addressing waived constitutional claims, and we exercise our discretion to review Father's claim here. *Id.*

[16] "Our courts have long recognized that parents have a fundamental right to family integrity, and 'the right to raise one's children is essential, basic, more precious than property rights, and within the protection of the Fourteenth Amendment to the United States Constitution.'" *Id.* (quoting *G.B.*, 754 N.E.2d at 1031). Because the NRE Statute eliminates the efforts DCS must make to reunify a child with a parent after the State has intervened in and restricted that fundamental right, we have strictly construed the NRE Statute. Strict scrutiny requires that the statute "serve a compelling state interest and be narrowly tailored to serve that interest." *Id.*

[17] We have previously held the NRE Statute is narrowly tailored to serve the compelling state interest of protecting a child's welfare and, thus, is constitutional. *See id.*; *G.B.*, 754 N.E.2d 1027. We do not re-visit whether the State has a compelling interest in protecting child welfare. The question we are presented with here is whether the new subsections, i.e. those regarding a parent with a Sex Offender Registry requirement or a conviction for child molestation as described, are narrowly tailored to serve that compelling interest. *See* I.C. § 31-34-21-5.6(b)(2)(C)-(D). Father argues the NRE Statute contains "no limiting language circumscribing the circumstances under which it should or should not be applied." Appellant's Br. p. 44. Specifically, Father contends the statute judges parents based on "past mistakes" "regardless of the remoteness" of that conduct. *Id.* at 43. We cannot agree.

[18] Subsections 5.6(b)(2)(C) and (D) are narrowly tailored to include only those parents who are required to register on Indiana's Sex Offender Registry or who

have been convicted of child molestation against another child. "Sex offenders are a serious threat[.]" *McCune v. Lile*, 536 U.S. 24, 32, 122 S.Ct. 2017 (2002). "When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *Id.* at 33, 122 S.Ct. 2017 (citing University of New Hampshire, Crimes Against Children Research Center, Fact Sheet 5; Sex Offenses 27; U.S. Dept. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997)). In addition, our court has previously observed that "child molesters molest children to whom they have access." *Bratcher v. State*, 999 N.E.2d 864, 874 (Ind. Ct. App. 2013) (quoting *Smith v. State*, 779 N.E.2d 111, 117 (Ind. Ct. App. 2002), *trans. denied*), *trans. denied*. As such, these subsections are "not more intrusive than necessary to protect the welfare of children" who reside with parents that have been convicted of child molestation or are required to register as sex offenders. *G.B.*, 754 N.E.2d at 1032.

[19] Because subsections 5.6(b)(2)(C) and (D) are narrowly tailored to serve a compelling state interest, they do not violate substantive due process under the Indiana and United States Constitutions. Moreover, a court's NRE finding is discretionary during a CHINS proceeding, and, even if a court finds that reasonable efforts to reunify are not required, DCS and the court "are still required to follow the statutory procedures in both CHINS and termination

cases." *G.B.*, 754 N.E.2d at 1032. Thus, we find no procedural due process violation on the face of the statute. [3]

## B. Constitutionality As Applied

[20] Father claims application of the NRE Statute to the facts of his case violated his substantive and procedural due process rights.[4] "[D]ue process protections at all stages of CHINS proceedings are vital because every CHINS proceeding has the potential to interfere with the rights of parents in the upbringing of their children." *In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014) (citations and quotations omitted). The process due in a CHINS proceeding is the same as what is due in a termination of parental rights (TPR) proceeding. *Id.*; *In re K.D.*, 962 N.E.2d 1249, 1257 (Ind. 2012). To determine whether a parent was afforded due process, "we balance the three factors laid out by the U.S. Supreme Court in *Mathews* [*Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893 (1976)]: '(1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure.'" *G.P.*, 4 N.E.3d at 1165-66 (quoting *K.D.*, 962 N.E.2d at 1257). "[T]he resulting balance of those factors

---

[3] For the first time on appeal, Father also argues the NRE Statute is void for vagueness. Father's claim is waived. *See Plank*, 981 N.E.2d at 53. Waiver notwithstanding, we have previously concluded the vagueness doctrine does not apply to the NRE Statute because it is not a penal statute. *See Matter of S.G.*, 67 N.E.3d 1138, 1146-47 (Ind. Ct. App. 2017).

[4] On appeal, Father labels his as applied challenge as a procedural due process violation; however, the content of his argument focuses on both his substantive right to parent Child and his procedural right to fair proceedings.

must provide 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews*, 424 U.S. at 333, 96 S.Ct. 893). Because the State and the parent have substantial interests affected by the proceeding, we focus on the risk of error created by DCS's and the trial court's actions. *In re T.W.*, 135 N.E.3d 607, 615 (Ind. Ct. App. 2019), *trans. denied*.

[21] Father undisputedly received adequate notice of DCS's motion for a NRE finding, and the court held a hearing where Father presented evidence in opposition to that motion. Father presented witnesses on his behalf, including his own father and his older son, who indicated a belief that Father did not pose a danger to Child. He also asked the court to consider the remoteness of his conviction. DCS presented evidence, however, in opposition to Father's position including that Father had a prior substantiation for sexual abuse of J.C. and that Child was displaying "sexually maladaptive" behaviors after being in Father's care. Tr. Vol. II p. 80. Father also had the opportunity to cross-examine every witness at the factfinding and NRE hearing. In addition, Father admitted he was required to register as a sex offender in Indiana and he had a prior conviction for molesting his older daughter, J.C. After considering the arguments of both parties, the trial court entered a NRE finding.

[22] Thus, Father was given an opportunity to be heard in a meaningful time and manner: he has not identified any procedural irregularity to persuade us that his procedural or substantive rights were violated by entry of the NRE finding. Therefore, we cannot conclude that DCS's or the court's actions created a risk

of error in the CHINS proceeding. As such, application of the NRE Statute to the facts of Father's case did not violate his due process rights.[5]

## C. DCS's Arguments

[23] Before turning to Father's subsequent issues, we elect to address DCS's responsive arguments. DCS attacks Father's substantive due process claim, alleging Father's claim "begin[s] with the flawed assumption that the Fourteenth Amendment protects a fundamental right to reasonable reunification services." Appellee's Br. p. 22. Asserting the Fourteenth Amendment does not provide Father with a fundamental right to state-sponsored services and that "the NRE [Statute]. . . does not impact Father's ability to parent Child[,]" DCS thus argues the rational basis review should apply to the NRE Statute. *Id.*

[24] DCS also contends "the cases that have found a procedural due process violation based on DCS's failure to provide reasonable services are wrongly decided." *Id.* at 23. DCS reasons that we have "consistently misapplied" the governing law for due process, failing to first consider that "[t]he existence of a liberty interest depends on whether a person facing governmental action has a legitimate claim of entitlement under the Fourteenth Amendment or state law."

---

[5] Father also argues "DCS itself may have waived application of the NRE statute by adopting its own written policies." Appellant's Br. p. 38. Although Father recites many of DCS's policies thereafter, he provides no authority to support his assertion that the existence of those policies amounts to waiver of a statute's applicability, and we find none. This argument is, thus, waived. *See* Indiana Appellate Rule 46(A)(8)(a) (requiring arguments on issues to be supported by cogent reasoning with citation to authorities).

*Id.* at 45, 46. Ultimately, DCS asserts that "the NRE Statute does not impact Father's protected liberty or property interests" because "the constitution does not guarantee parents facing CHINS proceedings a right to reasonable efforts, so the Fourteenth Amendment creates no entitlement to services." *Id.* at 51.

[25] We disagree with DCS's characterization of these issues and its attempt to minimize the impact that the NRE Statute has on Father's fundamental rights. DCS's position assumes that a parent's fundamental right to care, custody, and control over his children is readily separable from the reasonable efforts DCS is generally obligated to provide throughout a CHINS case. But that analysis is not so simple. It is well-settled that "due process protections at all stages of CHINS proceedings are vital because every CHINS proceeding has the potential to interfere with the rights of parents in the upbringing of their children." *Matter of D.H.*, 119 N.E.3d 578, 588 (Ind. Ct. App. 2019) (quoting *G.P.*, 4 N.E.3d at 1165 (quotations and citations omitted)), *trans. denied*. Moreover, our Supreme Court has observed that "CHINS and TPR—are deeply and obviously intertwined to the extent that an error in the former may flow into and infect the latter" and "procedural irregularities . . . in a CHINS proceeding may be of such import that they deprive a parent of procedural due process with respect to a potential subsequent termination of parental rights." *G.P.*, 4 N.E.3d at 1165. Our precedent is clear that a fundamental right—i.e. a parent's interest in the care, custody, and control of his or her child—is at stake at every stage of a CHINS case.

Because our legislature's mandate that DCS shall provide reasonable efforts to reunify families is predicated on DCS's removal of a child from her home (and, thus, the initiation of CHINS proceedings), it is indisputable that a parent's entitlement to reasonable efforts is inextricably linked to a parent's fundamental rights via the CHINS case. In other words, but for DCS's interference with a parent's fundamental right, there would be no CHINS proceedings to trigger entitlement to reasonable efforts. This nexus between a parent's fundamental right and reasonable efforts is why we have held that, to protect due process in a termination proceeding, "DCS must have made reasonable efforts to preserve and/or reunify the family unit in the CHINS case[,]" *T.W.*, 135 N.E.3d at 615, even though the CHINS statute requiring reasonable efforts to reunify "is not a requisite element of our parental rights termination statute[.]" *In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009).

It follows that when DCS moves for a NRE finding, which may be made "at any phase of a [CHINS] proceeding[,]" a parent's fundamental right to parent his child is again impacted by the government's exercise of authority over his child. I.C. § 31-34-21-5.6(a). So, while an individual's right to state-sponsored services or reasonable efforts may not be fundamentally protected on its own, parental rights are fundamentally protected and inevitably impacted by whether DCS provides such efforts *after* removing his child from his care. Therefore, we continue to strictly construe whether the NRE Statute violates a parent's substantive due process rights. *See G.B.*, 754 N.E.2d at 1031-32; *S.G.*, 67 N.E.3d at 1145.

[28] Further, DCS contends *T.W.*, 135 N.E.3d 607, was wrongly decided for three reasons: first, that we misapplied the *Mathews* balancing test without first considering whether the parent in that case had an entitlement to services; second, that we have required process beyond constitutionally protected minimums; and third, that we treated a "run-of the-mill issue[] of statutory compliance as [a] constitutional violation[]." Appellee's Br p. 49. We disagree.

[29] As we explained above, reasonable efforts or the lack thereof by a NRE finding are inextricably intertwined with DCS's restriction of a parent's fundamental rights during a CHINS proceeding. Because a parent's fundamental liberty interest was at stake in *T.W.*, the first step of *Mathews*, i.e. determining whether a protected Fifth Amendment interest was at stake, was implicitly met. For the same reason, *T.W.*'s discussion of reasonable efforts focused not on whether DCS complied with the reasonable efforts statute, but on whether DCS's irregularities in providing reasonable efforts or not violated that parent's liberty interests. And, in applying the three-factor *Mathews* balancing test in *T.W.*, we followed our Supreme Court's precedent applying the same to CHINS and TPR proceedings. *See G.P.*, 4 N.E.3d at 1165-66. The *T.W.* court did not misapply the *Mathews* test to evaluate a parent's due process claim in the context of a TPR case.

### III. NRE Finding and Motion to Reconsider

[30] Next, Father asserts the trial court abused its discretion by entering a NRE finding on the facts of his case. Because the term "may" in a statute ordinarily implies a permissive condition and a grant of discretion, we review a court's

NRE finding for an abuse of that discretion. *See Key v. State*, 48 N.E.3d 333, 337 (Ind. Ct. App. 2015) ("may" implies permissive condition and grant of discretion); *see also S.G.*, 67 N.E.3d at 1144 (concluding trial court's entry of NRE finding was not an abuse of discretion). We also review a trial court's decision to grant or deny a motion to reconsider for an abuse of discretion. *Matter of Est. of Lewis*, 123 N.E.3d 670, 673 (Ind. 2019). "A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court." *Matter of N.E.*, 228 N.E.3d 457, 473 (Ind. Ct. App. 2024).

[31] As discussed above, the trial court may enter a NRE finding if a child's parent has been convicted of child molesting as described in the NRE Statute or is required to register as a sex offender under Indiana Code section 36-2-13-5.5. In addition, the court was required to consider the best interests of Child when making its NRE determination. Ind. Code § 31-10-2-2 (2019).

[32] Father does not dispute that he was convicted of child molesting as described in the NRE Statute or that he is required to register as a sex offender under section 36-2-13-5.5. Further, Father does not argue that the trial court failed to consider Child's best interests in entering a NRE finding. Instead, Father argues the passage of time since his conviction, Child's negative forensic exam, and testimony of some witnesses regarding "their beliefs that Father posed no danger" to Child are all facts and circumstances that disfavor the NRE finding. Appellant's Br. p. 38. We are not persuaded by Father's argument.

[33] Regardless of the timing, Father has a prior DCS substantiation for sexual abuse. While Child was staying with J.C., she displayed "sexually maladaptive" behaviors including touching herself and J.C.'s daughter in a sexually inappropriate manner and acting out sexual gestures. Tr. Vol. II p. 80. And although Child's January 2025 exam did not reveal signs of acute sexual abuse, the evidence shows that exam was not dispositive of whether Child was sexually abused prior to October 2024 when she began staying with J.C. Indeed, the forensic examiner who saw Child testified that, not only could acute signs have healed by the time of the exam, but "[o]ftentimes there are no signs of acute sex abuse" during forensic exams. *Id.* at 175. In addition, the court considered other factors concerning Child's best interests among the seventy-three factual findings it made in this case, including Father's housing instability, his non-participation in services, and Child's medical and developmental conditions. Considering these facts alongside Father's criminal conviction for child molestation and his lifetime registration requirement, we cannot conclude the court abused its discretion in finding that reasonable efforts to reunify Child with Father were not required. For the same reasons, the court did not abuse its discretion in denying Father's motion to reconsider its NRE finding.

## IV. Sufficiency of Evidence

[34] Father also appears to challenge whether the evidence was sufficient to support the CHINS finding. In doing so, Father concedes that Child "was a CHINS as of the time of the May 2025 Fact Finding Hearings[.]" Appellant's Br. p. 33.

However, Father asserts that by August 2025, when the adjudication order was entered, the "circumstances had changed to the point the CHINS conditions had lifted or could have been alleviated[.]" *Id.* at 30 (formatting altered). In support of his argument, Father notes he had housing by August 2025 and that Child's developmental issues showed signs of change. He also claims his "therapist would later testify he was on the verge of making a recommendation for Father to have parenting time with [Child]." *Id.* at 32. In any event, the therapist made no such recommendation before the factfinding order was issued. And although Father argues *he* sought services without coercive intervention after the factfinding, he does not argue that *Child's* needs would have been met without the court's coercive intervention *before* the Child was adjudicated a CHINS. Father also does not challenge any factual findings or conclusions as clearly erroneous. For all these reasons, Father's argument is not a challenge to the CHINS finding and is waived.

[35] Nevertheless, the evidence was sufficient to prove Child was a CHINS. In reviewing a trial court's CHINS determination, "we do not reweigh evidence or judge witness credibility" but consider only the evidence supporting the trial court's judgment and the reasonable inferences therefrom. *In re D.J.*, 68 N.E.3d 574, 577-78 (Ind. 2017). Where, as here, the court entered findings of fact and conclusions of law, we consider "first, whether the evidence supports the findings and, second, whether the findings support the judgment." *Id.* at 578 (internal quotations omitted). "We accept unchallenged findings as true." *Matter of W.H.*, 254 N.E.3d 549, 554 (Ind. Ct. App. 2025).

[36] The trial court concluded Child was a CHINS under Indiana Code section 31-34-1-1, which provides in pertinent part that a child is a CHINS if her "condition is seriously impaired or seriously endangered" due to the parent's "inability, refusal, or neglect" to provide the child with necessities, and the child needs care or treatment the child is not receiving or is unlikely to receive without coercive intervention of the court. The court also determined Child was a CHINS under Indiana Code section 31-34-1-3(a) because she resided in a household with an adult who was convicted of child molesting under Indiana Code section 35-42-4-3, and she needed care she was not receiving without coercive intervention of the court. Finally, the court found that Father did not rebut the presumption under Indiana Code section 31-34-12-4.5 that Child was a CHINS because she lived with Father, who was convicted of an offense described in Indiana Code section 31-34-1-3.

[37] Here, the evidence showed that Father did not have adequate shelter for Child at the time of her removal or by the factfinding. When Child went to her sister's home in October 2024, Child had a yeast infection, a UTI, and a staph infection and displayed sexually maladaptive behaviors. Initially, Father provided only a car seat and one bag of diapers for Child; a couple of days after Child went to her sister's, Father provided medication only for Child's staph infection. He did not provide J.C. with money or other necessities for Child. And, despite his initiation of therapy post-factfinding, Father refused to participate in services to remedy the conditions for removal prior to factfinding. All this evidence sufficiently supports the CHINS adjudication. Further, it is undisputed that

Father has a criminal conviction for child molestation as described in Indiana Code section 31-34-1-3. He thus failed to overcome the presumption that Child is a CHINS. The evidence sufficiently supports Child's CHINS adjudication.

## Conclusion

[38] Subsections 5.6(b)(2)(C) and (D) do not violate constitutional due process rights on their face or as applied to Father. The court did not abuse its discretion in making a NRE finding in the instant case or in denying Father's motion to reconsider that finding. And the evidence sufficiently proved Child is a CHINS. We affirm.

[39] Affirmed.

Bailey, J., and Vaidik, J., concur.

ATTORNEY FOR APPELLANT

Daniel G. Foote
Foote Law Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Evan M. Comer
Supervising Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE – GUARDIAN AD LITEM

Katherine Grace Meger Kelsey
Indianapolis, Indiana